# Fidelity Mutual Life Insurance Company v. Hembree.

(Decided June 2, 1931.)

BRUCE & BULLITT, R. LEE BLACKWELL, and TUGGLE & TUGGLE for appellant.

HIRAM H. OWENS for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER. —Affirming in part and reversing in part.

The defense made by the appellant to a suit on a policy issued by it on the life of Charles Hembree was that the contract of insurance never became effective, as the policy was not unconditionally delivered to him, and that, in consideration of the cancellation of a note given for the premium, the insured had formally released the company from liability. A jury decided the issue against the company, and it appeals from the judgment on the ground that it was entitled to a decision by the court as a matter of law on the entire case, or at least

as to the claim for double indemnity by reason of accidental death. It is further argued that one of the instructions was erroneous.

Unconditional delivery, actual or constructive, is an essential element of every written contract—the question being one of intention—unless the parties have entered into mutual engagements with the understanding that they are to be immediately effective, e. g., on the acceptance by an insurance company of an application for a policy and the payment of the premium. As pointed out in Kentucky Central Life & Accident Insurance Company v. Pemberton, 212 Ky. 510, 279 S. W. 968, we have two lines of cases dealing with the effect of the delivery of a policy to an agent for delivery to the insured. The present contract by its terms required the delivery to and acceptance by the applicant of the policy and the payment in full of the first premium before it should become effective. The question is whether the circumstances constituted a delivery to the decedent. It is one of fact, since the applicable law is clear and unquestioned.

On August 18, 1928, the insured made a formal application through the company's agent at Barbourville for a policy which contained certain disability benefits and provisions for double indemnity in case of accidental death. On the same day he executed and delivered to the agent a six months' note for $32.77 covering the premium. The note, although payable to the agent personally, appears to have been sent with the application to the company. On advice of its medical department, the company declined to issue the policy applied for, but prepared one of the same kind without the disability benefits, and forwarded it to its agent to be offered Hembree.

The decision of the case rests in the main upon the testimony of the Company's agent as to subsequent events. His testimony is so variable and contradictory in itself as to have required submission to the jury to say what the true state of fact was.

He testified that Hembree called at his office and they went over the proposed policy together, he explaining to him the difference between it and the one applied for. Hembree said he would rather have the one with the disability benefits, but, as he could not get it, he would take the policy as it was, and that he would leave

it at the agent's office and call by for it on his way from work, and would settle for it. He asked how long he had in which to pay and was told sixty days, since that was the period the agent had in which to remit the premium or return the policy. The premium on this policy was $28.59, and Hembree then executed a sixty-day note apparently bearing the date of the policy, September 4th, payable to the agent, which he accepted as payment, on the promise of Hembree that he would take it up within the sixty days. He says he gave him back the six months' note for $32.77 which he had signed at the time he made his application. The agent never saw Hembree again, and at the end of sixty days returned the policy to the company which marked it "not taken." He did not return the second note to Hembree, and says that he carried it around with him and lost it before the trial.

On the other hand, the agent testified that it was definitely agreed between Hembree and himself that, unless he paid the note within sixty days and called for the policy, it should be returned to the company for cancellation. After having accepted the six months' note, and before accepting the sixty-day note, the agent had checked up on Hembree and says unequivocally that from the knowledge thus acquired he would not have delivered the policy until the note was paid, even though it had been called for, since he was responsible to the company for the premium and did not intend to take any chances on losing it. Asked if it was his intention to withhold delivery of the policy until he got the payment of the premium, he answered: "Yes, sir; but he didn't know it." He stated definitely that he accepted the note in payment of the premium and still had it as evidence of the obligation.

That the policy was returned to the company on or about November 4th is not questioned. Shortly thereafter, the agent testified, there was sent him by the Louisville office of the company a form of release from liability, which he mailed to Hembree with a note asking him to sign and return. It was received back by him within three or four days in a stamped envelope addressed to himself which he also had inclosed to Hembree. Thereupon he signed his name as a witness to Hembree's signature and forwarded it to the company. He did not return the $28.55 note to Hembree as he wanted to give it to him in person to be sure he got it, although he had

secured a written acknowledgment that the company says was intended to cover this very note. This release purports to have been signed by Hembree, but two witnesses testified that it is not his signature, and there is none save the company's agent testifying differently. The original paper is before us, as is the original application, and from our comparison we are inclined to agree with the evidence that it was not Hembree's signature.

The paper recites that the consideration for the release of liability on the policy issued September 4th (described by the correct number) was the return to the insured of his unpaid note dated August 18, 1928, due February 18, 1929, for $32.77 (the first note given by him). It bears date of December 29, 1928, which was twenty-three days after Hembree's death. It is clear that "Nov." had been first written and then partially erased with "Dec." superimposed, apparently, by the same typewriter. Neither side undertakes to explain this change, except that appellee charges the whole thing to have been an attempt by the agent to perpetrate a fraud in order to avoid liability. No representative of the company testified concerning it, except the correspondence shows its receipt by the head office after it is purported to have been executed.

From the variable testimony of the agent and the reasonable inferences and deductions, the jury was justified in finding that there was a delivery of the policy to the insured and an acceptance in payment of the premium of either the six months' note originally given or of a sixty-day note which the agent testified to having received in lieu of it. Where it is not contemplated that a note taken for a premium could be released or discharged except by payment in some manner, the acceptance of the note will constitute a satisfaction of the premium which it covers. Commonwealth Life Insurance Company v. Leete, 224 Ky. 584, 6 S. W. (2d) 1057. It appears that the agent intended merely to hold the policy as a pledge to secure the payment of the note. That condition of delivery, however, existed only in his own mind, as he says he did not tell Hembree of his intention and he knew nothing of it. A contract cannot be rescinded by one party only. Mattingly-Lusky Realty Company v. Camper, 228 Ky. 407, 15 S. W. (2d) 240. At any rate, the question of delivery or nondelivery was submitted to the jury, as was also the validity of the

release relied on by the company, and the jury found that there had been a delivery of the policy under the instruction relating to that issue.

Other than a criticism of the instruction submitting the issue as to the delivery because it authorized double indemnity, the appellant says it is erroneous because it permitted recovery if the jury believed that either the six months' note for $32.77 or the sixty-day note for $28.59 was retained as payment of the premium on the policy sued on. The basis of the criticism is that there was no evidence that the six months' note was retained. True it is that the agent testified that he had returned that note to Hembree at the time he presented the counter-offer policy and the sixty-day note was executed. There are circumstances—for example the reference to this note in the release—however, which would indicate that the six months' note had not been surrendered to the decedent. The jury may not have believed the testimony of the agent.

The policy provided for the payment of double the principal sum of the policy, to-wit $1,000, under the terms and conditions set forth in the following clause:

> "Upon receipt, at its Head Office, of this policy duly discharged and of due written proof that, prior to Date of Maturity, the death of the insured resulted directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, of which (except in case of drowning or of internal injuries revealed by an autopsy) there is a visible contusion or wound on the exterior of the body, . . . the Company will pay, instead of the Death Benefit, a Double Death Benefit, to-wit $2,000.00."

The allegation of the petition in this regard is simply this:

> "On December 3, 1928, the said Charles Hembree came to his death through accidental means caused by slate falling upon him while in the employment of ———— Coal Company."

The only evidence as to the manner in which the insured met his death is an attested copy of the death certificate issued by the state registrar of vital statistics.

The cause of his death on December 6, 1928, is thus given: "Accidental electrocution in coal mine—in contact with live trolley wire." This was prima facie evidence of that fact. Section 2062a-21, Statutes; Metropolitan Life Insurance Company v. Cleveland's Adm'r, 226 Ky. 621, 11 S. W. (2d) 434.

It is apparent, therefore, that the court should have sustained the defendant's motion for a peremptory instruction to the extent of this double liability because it was insufficiently pleaded and there was a variance or failure of proof. Upon a return, the plaintiff should be permitted to amend his pleadings to conform to the facts and to prove, if he can, that the insured's death came within the double indemnity provision of the policy.

In Davis v. Pendennis Club, 230 Ky. 465, 19 S. W. (2d) 1078, 1084, it is written:

> "Where, in actions upon contracts, embracing distinct claims, determined by the circuit court, this court, upon appeal, finds error only as to a single claim, the rule is to affirm the portions of the judgment unaffected by prejudicial error, and reverse the portion that resulted from the erroneous rulings."

The judgment is affirmed to the extent of $1,000 and interest, credited by the amount of the note, and reversed to the extent that it awards double liability because of accidental death.