## Ford v. Commonwealth Life Insurance Company.

(Decided Jan. 30, 1934.)

BECKHAM A. ROBERTSON for appellant.
E. B. ANDERSON and CARROLL E. BYRON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

On July 5, 1929, the Commonwealth Life Insurance Company issued a policy for $1,000 on the life of Mrs. Louella Ford, with her husband, Robert Ford, as beneficiary. She died of tuberculosis on January 18, 1930. The company resisted payment upon the ground that the insured had made material misrepresentations in

her application. The court gave a peremptory instruction for the company, and this appeal challenges the correctness of that ruling. The beneficiary, as appellant, insists that the evidence was in conflict and required a submission of the issue to the jury.

Let us first set down the applicable law upon which both sides agree—the sufficiency of the facts to be tested by that law being the problem of the court.

Under section 639 of the Statutes, as interpreted by many decisions of this court, representations made to an insurance company which are false and material to the risk will defeat recovery on the policy issued thereon even though they were made innocently; the matter of good faith on the part of the applicant being a thing apart. New York Life Insurance Company v. Long, 199 Ky. 133, 250 S. W. 812; Commonwealth Life Insurance Company v. Goodnight's Adm'r, 212 Ky. 763, 280 S. W. 123; Penick v. Metropolitan Life Insurance Company, 220 Ky. 626, 295 S. W. 900, 902; Etter v. National Life & Accident Insurance Company, 228 Ky. 399, 15 S. W. (2d) 242; Globe Indemnity Company v. Daviess, 243 Ky. 356, 47 S. W. (2d) 990. As a subsidiary rule, or rather an interpretation of the principal rule, we have the qualification that a representation must be materially false and not merely literally false in order to avoid the policy, that is, the contract will not be destroyed by a misrepresentation of an immaterial nature, such, for example, as where an applicant stated he had not been treated for some minor temporary ailment having no relation to the conditions which brought about the death of the applicant. Couch's Cyc. of Insurance Law, sec. 831; Mutual Benefit Life Insurance Company v. Daviess' Ex'r, 87 Ky. 541, 9 S. W. 812, 10 Ky. Law Rep. 577; U. S. Health & Accident Insurance Company v. Bennett's Adm'r, 105 S. W. 433, 32 Ky. Law Rep. 235; Penick v. Metropolitan Life Insurance Company, supra; Columbia Life Insurance Company v. Tousey, 152 Ky. 447, 153 S. W. 767; Ætna Life Insurance Company v. Claypool, 128 Ky. 43, 107 S. W. 325, 32 Ky. Law Rep. 856.

In seeking to avoid payment under its contract upon the ground of misrepresentations, the burden of proof is on the insurance company. Where a reputable physician testifies that upon an examination he had found the insured to be suffering from a particular dis-

ease, "there is nothing on the question of falsity to submit to the jury unless he is impeached or contradicted by the other evidence." That contradiction may be by "evidence of facts and circumstances which tend, if true, to show that the physician's diagnosis was incorrect, and where this is done the question is for the jury, and not for the courts." Penick v. Metropolitan Life Insurance Company, supra.

We look to the evidence to be measured by these standards for a conclusion respecting the propriety of the peremptory instruction.

The application was made on June 28, 1929, seven months before the insured's death. She was then eighteen years old and had married the previous April. There is no contradiction in the evidence as to the materiality of the misrepresentations which became the defense, and no point is made on the appeal as to that phase.

The claimed misrepresentations are of two classes, and one of those classes involves the health and death of two persons.

■ The insured represented that: (a) The cause of the death of her mother was "not known"; (b) the cause of the death of her brother was "cigarette smoking"; (c) there had never been any cases of tuberculosis in her family; and (d) she had never occupied the same house or room or lived with a tubercular person. It is not denied that the insured had lived in the same house with her mother and brother, so that the issues on this branch of the case were only as to whether they or either of them had had or had died of tuberculosis.

(a) It may be conceded, without relating the facts or deciding that issue, that there was some conflict in the evidence concerning the health and the cause of the death of the mother, which occurred January 6, 1926.

(b) The evidence as to the brother, Edward Lee Richmond, is meager. He was about 21 years old when he died on January 4, 1929, which was five months before the application for this insurance. His death certificate shows that he died of pulmonary tuberculosis of two years' duration. The death certificate is prima facie evidence of the cause of death. Section 2062a-21, Statutes; Metropolitan Life Insurance Company v.

Cleveland's Adm'r, 226 Ky. 621, 11 S. W. (2d) 434; Fidelity Mutual Life Insurance Company v. Hembree, 240 Ky. 97, 41 S. W. (2d) 649. But Dr. Edge, who made out that certificate, testified that he had not seen the deceased for seven months before his death.

Over against this is the evidence of the father that his son went to Arkansas about a year before he died, came home in April, and stayed until August, when he went to Kansas. He was brought back home nine days before he died, but no doctor attended him during this period. He smoked cigarettes continuously. Dr. Barr, who made the medical examination of the insured, testified that a man may smoke cigarettes excessively until his heart and lungs are affected and he may die prematurely; that cigarette smoking may cause death.

This was all the evidence upon the point. There was no contradiction whatever of the death certificate showing that the cause of the young man's death was tuberculosis. Only a feeble effort was made to show that he may have died from the effects of smoking, and the result of that effort was negligible as proof.

■ Concerning herself the insured represented that: (a) She had not consulted a physician in the last ten years; (b) no physician had ever expressed an unfavorable opinion as to her health or insurability; and (c) she did not have, and had never had, any other disease or injury. For some time before her marriage in April, Mrs. Ford was employed in the office of Dr. Sanders, a dentist. Dr. Thorpe, a throat specialist, testified that before her marriage and while she was working for Dr. Sanders, "either in the fall of 1928 or 1929, probably 1928," through arrangements made by Dr. Sanders, she called at his office and he found that she was suffering with laryngeal tuberculosis, and that he told her of her condition. He was of the opinion that there was a pre-existing tubercular condition of the lungs. No one else was present on this occasion except his office nurse. Mrs. Ford called again after her marriage, and he found that the condition had progressed to the point of ulceration and painful swelling. She was then having difficulty in breathing. Her husband was with her on this occasion. The doctor gave the patient only a gargle to make her throat more comfortable. He had made no record of these visits and was testifying from memory.

In opposition to this, the husband testified, without objection, that his wife had continued her work at Dr. Sanders' office for two or three weeks after their marriage, and that it was during this period, about April 25th, that she called upon Dr. Thorpe the first time and he accompanied her. He says that the doctor did not tell his wife that she had tuberculosis or what was the matter with her. He gave her a gargle, and her condition improved so that in a week or two she was all right. The other time his wife called upon Dr. Thorpe was in December, 1929, when he accompanied her. This was six months after the policy was issued. It is difficult to find in this testimony any substantial contradiction in Dr. Thorpe's evidence that the young lady had called alone before her marriage and he had then told her of her tubercular condition. Whether he told her or not is not so important. The more material thing is that she was tubercular, and that is not controverted. Dr. Edge testified he had visited Mrs. Ford, then Miss Richmond, professionally on January 8 and 11, 1929, and that on January 14th she had called at his office for treatment. She then had a ''form of tonsilitis or laryngitis; if I remember right, more than her tonsils were involved.'' On cross-examination he testified ''she had a local inflammatory condition of the posterior part of her mouth or pharynx.'' Asked if he had found a tubercular condition and advised her of it, the doctor answered: ''Not positively so, no sir.'' Dr. Barr, the medical examiner, testified that he had detected no tuberculosis in June and found nothing wrong with the applicant when he examined her for the insurance. Dr. Coffman, who attended Mrs. Ford at her death, saw her for the first time in October preceding, at which time she was suffering from tubercular laryngitis and the disease seemed to be running a very rapid course. He would not attempt to tell when she had contracted the disease. Two friends testified that Mrs. Ford seemed to be in good health and was able to do all her housework until a short time before her death.

The record, therefore, discloses that the insured had consulted at least two physicians several times within six months as to a very material matter, whereas she represented that she had not consulted any physician in ten years. The testimony of Dr. Thorpe as to her condition and as to having told her that she had tuberculosis upon her first visit to his office alone is not

contradicted, as we have stated. Then there is, in addition, the evidence of Dr. Edge tending to show that she had a diseased condition of the throat in January, which is undenied. Thus in these particulars the representations in the application for insurance were proven without contradiction to be untrue. We have not overlooked the testimony of Dr. Barr that he found no such disease on June 29th. Accepting this testimony at its face value—notwithstanding the evidence of Dr. Coffman that she had tubercular laryngitis in October and died from pulmonary tuberculosis three months thereafter—it does not conflict with the evidence that the insured had had the disease previously (Cf. Columbia Life Insurance Company v. Tousey, supra) or had consulted a physician within ten years.

It was not necessary that all of the representations should be proven false and material to the risk. It was sufficient to prove that any one of them was so. This record, it seems to us, conclusively shows that there were false representations concerning the cause of the death of her brother and regarding her own condition and medical consultation, which are obviously very material. We are therefore of the opinion that the peremptory instruction was proper.

Wherefore the judgment is affirmed.