## Bringardner Lumber Co. v. Knuckles et al.

(Decided March 9, 1934.)

JAMES H. JEFFRIES for appellant.

GOLDEN, GILBERT & GOLDEN and D. M. BINGHAM for appellees, with exception of Asher Coal Mining Co.

LOW & BRYANT for appellee Asher Coal Mining Co.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The Bringardner Lumber Company, appellant herein, and hereinafter called the lumber company, entered into a contract in 1929 with the Asher Coal Mining Company, hereinafter called the coal company, whereby the coal company was to sell the lumber company a large tract of land, together with a right of way for a tram road running from the Louisville & Nashville Railroad's main line up through the acreage to be sold for the purpose of getting the timber out that was cut from the land. It was known that title to many parts of this acreage was defective or in a clouded condition, and so it was agreed that the coal company should clear up the title before the lumber company should have to pay fully for the same. The coal company undertook to clear its title and when it thought that it had done so, it presented a deed to the lumber company for the acreage sold, which the lumber company declined to accept on the ground that the titles were still defective and clouded. The coal company then renewed its efforts to clear the title and later presented a second deed which the lumber company also declined to accept. The coal company then brought a suit against the lumber company for specific performance. The lumber company answered, setting up the reasons why it did not take the land because of defects and clouds upon the title, and it cross-petitioned against a number of cross-defendants whom the lumber company averred were claiming some interest in the acreage involved. Among these cross-defendants were the present appellees, members of the Knuckles family. W. R. Knuckles, now deceased, formerly owned a tract of land embraced in the present controversy. He devised it to his four sons, J. B. Knuckles, W. L. Knuckles, M. F. Knuckles, and George

M. Knuckles, Sr., each owning a one-fifth of the land. The other fifth was divided among three grandsons who were sons of a deceased son of W. R. Knuckles. These three grandsons were John Berry Knuckles, Jr., George M. Knuckles, and Edgar Knuckles. The pleadings filed by the lumber company and the Knuckles family brought to the front this controversy: In September, 1930, a deed and contract were entered into between the lumber company and the Knuckles family. The body of the contract and deed purported to embrace all of the Knuckleses who were the owners of the land of their ancestor, W. R. Knuckles, but neither the deed nor the contract was signed by two of the grandsons, John Berry Knuckles and Edgar Knuckles, each of whom owned a one-fifteenth interest in the land. The deed purported to convey the Knuckles interest in slightly over 7 acres of land for a right of way for the tram road of the lumber company. The contract provided that the consideration for the right of way so deeded was the agreement of the lumber company to construct a certain spur or side track from its tram road up into other lands owned by the Knuckles family, and an agreement to transport at fair rates over the spur track and the tram road to the main line of the Louisville & Nashville such freight as the Knuckles family would offer for transportation, it being understood it was to be mainly timber which the Knuckles family was cutting from this other land. The contract provided that this spur or side track was to be constructed as soon as practicable and in all events by March, 1931. The pleadings disclose that although the lumber company entered upon the land conveyed to it and constructed its said tram road, it has never constructed the spur or side track. The Knuckles family at first undertook in their pleadings to recover damages from the lumber company for its failure to construct the spur or side track. Later, they undertook to rescind the deed and contract because of the lumber company's breach, but on being required to elect whether they would prosecute their action for a rescission or for damages they elected to prosecute it for damages. The lumber company took the position that the deed and contract had never been fully executed by the appellees since the two grandsons had never joined in either the deed or contract, and that the remaining Knuckleses could not sue on this incomplete deed and contract. After a great many pleadings and orders of the court had been filed and entered, the

Knuckleses, by an amended petition, sought to change in part the action from the equitable one it was into a declaratory judgment suit. They asked for a declaration of rights on the issues as presented by the pleadings in the case. The lumber company resisted the effort to turn the case, in part, into a declaratory judgment suit. The chancellor sustained the appellees in their effort to have a declaration of rights made and adjudged the rights of the parties under the contract and deed and issues presented by the pleadings, most of which declarations were against what the appellants conceived to be their rights. From the judgment so entered declaring the rights of the parties, this appeal is prosecuted.

We are of the opinion that the court should have sustained the lumber company's objection to the effort of the appellees to obtain a declaration of rights under the Declaratory Judgment Act (Civil Code of Practice sec. 639a-1 et seq.) on the issues as presented in the pleadings and under the contract and deed involved in the equitable action. As pointed out in the case of Jefferson County v. Chilton, 236 Ky. 614, 33 S. W. (2d) 601, 603, the fourth section of the Declaratory Judgment Act, now section 639a-4 of the Civil Code of Practice, in so far as it provides:

"Further relief, based on a declaratory judgment, order or decree, may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief, either in the same proceeding wherein the declaratory judgment, order or decree, was entered, or, in an independent action";

obviously provides the manner of obtaining additional relief that may be rendered necessary by a declaratory judgment. This section has no application to an original action for a declaration of rights. It is confined by its terms to supplemental proceedings subsequent to a decree or other declaration under the act and for further relief thereunder. As the Chilton Case further points out, the Declaratory Judgment Act (Civil Code of Practice sec. 639a-1 et seq.) was not designed and is not suitable for the determination of the procedural rules or the declaration of the substantive rights involved in a pending suit. Such decisions and declarations must be made in the first instance by the court whose power is invoked and which is competent

to decide them. Every issue in the instant case upon which the appellee sought a declaration of rights is presented by the pending equitable action in which the trial court may render judgment upon them with the right of review in this court. In the last analysis, we are asked to render judgment on issues obviously of law on admitted facts and which could be raised by demurrer in the pending litigation and when so raised decided by the trial court. The Chilton Case is conclusive of the rights of the appellees in the instant case to have under such circumstances their rights declared under the Declaratory Judgment Act in the pending litigation. The lower court should not have made a declaration of rights. Wherefore, the judgment is reversed for proceedings consistent with this opinion.