## Bringardner Lumber Co. v. Knuckles et al.

(Decided June 8, 1937.)

CLEON K. CALVERT, JAMES H. JEFFRIES and J. B. SNYDER for appellant.

GOLDEN & LAY, JAMES M. GILBERT and D. M. BINGHAM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

In Bringardner Lumber Company v. Knuckles, 253 Ky. 292, 69 S. W. (2d) 345, it is related that the devisees of W. R. Knuckles conveyed a right of way for a logging railroad to the Bringardner Lumber Company in consideration of its agreement to build for the grantors a spur track, about 1,000 feet in length, connecting with its line and to give them right of transportation over it for a reasonable compensation. A judgment declaring the rights of the parties in a controversy concerning the entire matter was reversed because the is-

568

sues were no't properly determinable under the Declaratory Judgment Act (Civ. Code Prac. sec. 639a-1 et seq.).

As finally evolved, through pleading and stipulation, the case became one of the Knuckles family against the lumber company for damages for the wrongful taking of their property for the tram road. It was tried as if it were a condemnation proceeding. The lumber company had constructed the grade for the Knuckles spur by March 1, 1931, the date stipulated for its completion, and offered to lay the rails and finish it immediately after it had finished and opened its tram road for commercial use in the following October. But the grantors refused to permit its completion. It appears, therefore, that the consideration promised to be paid by the lumber company for its right of way failed. Whether that was through the fault of the one or of the other it is now unnecessary to determine. We avoid also any expression of opinion as to how the money which may be paid on a judgment for the taking of the land and damages for the tram road should be apportioned among the appellees and as to the effect the deed from them should have in the matter.

The appellees asked damages in the sum of $10,-449.20. The verdict was for $4,000.

The appellees owned between 1,500 and 2,000 acres of land at the head of Red Bird creek in Bell County. There were 125 or 150 acres on the west side of the creek, and this logging railroad was built on that property down the side of a mountain. The road extends across appellees' property for 3,151 feet and the width of the right of way contained in the deed was 100 feet. The actual land taken under such measurement is 7.246 acres. The evidence of the quantity and extent of excavated material thrown or falling on other property is confusing and conflicting. The appellees say that 11½ acres were covered by such material. But that included their graded spur track. There was some rail fencing destroyed, but its worth is not shown. The timber had been removed from the side of the mountain long before this road was built and it was practically barren. One of the major points of argument as to consequential damages to the remaining property is that the railroad cut off that body of land on the west side of the creek from the other. It seems to have been cut

off by the creek, which was not crossed by the railroad, and we do not gather from the evidence that the building of the railroad made that property more inaccessible.

The appellees proved that about a year before the property was taken over (September, 1930), they had been offered and had refused $50 an acre for their land and that was shown then to be the fair reasonable value. That is the sum taken as the basis of their calculation of value and damage. Many witnesses testified that in their opinion the property owned by the appellees had been diminished in value one-half by reason of the construction of this tram road. Thus their holdings worth from $75,000 to $100,000 were quickly reduced to $37,500 to $50,000. However, before the railroad was built, the appellees had returned their property for taxation as containing 785 acres worth $9,600. They had valued the surface at $1,800, the improvements, minerals, and timber making up the difference. The county board of tax supervisors raised the assessment to $10,000 or about $14 an acre.

Evidence introduced by the appellant minimized greatly the conception of large consequential damages, both in extent and amount. No buildings or improvements of any character were interfered with or damaged. Most of the material excavated from the cuts for the railroad was put upon the 100-foot strip, for which compensation was claimed for a taking and so regarded by both parties. But that fact was not considered, it appears, by appellees' witnesses. Undoubtedly, some rocks and material rolled down the hill on to appellees' property. A maximum area of 5 acres was estimated by a surveyor to have been covered by this material beyond the right of way and that was between the railroad and the creek. Witnesses for the appellant valued the land taken and covered at from $3 to $10 an acre. They could see little or no consequential damage to the residue.

The parties agree that the measure of recovery was and is the reasonable value of the land taken at the time, and such damages as were sustained by the adjacent lands, including those which might accrue in the future by the use to which it is put. But the appellees submit that the land used for the uncompleted spur must be taken into consideration. That right of way

was never taken by the appellant. Under contract, it graded the roadbed for the appellees' use. If the company breached that contract, that is another matter. It would appear the appellees have benefited by the appellant's labors to the amount of about $1,000, the cost of the grading of the spur. It is to be observed that the land covered by the spur was apparently not embraced in the instructions which the appellees asked the court to give the jury.

We are not unaware of the right of citizens to have a jury determine issues of fact. But there is a universally recognized power and duty in courts, which goes along with and is a part of a trial by jury, to review the verdict. If it appears to the court in the exercise of a judicial discretion that such verdict is flagrantly against the evidence, it becomes its duty to set it aside. Kentucky-West Virginia Gas Co. v. Hays, 238 Ky. 189, 37 S. W. (2d) 17. The probative value of opinions of witnesses as to value depend in a large measure upon the facts. Warfield Natural Gas Co. v. Laferty, 232 Ky. 248, 22 S. W. (2d) 611. In considering the opinions of the several witnesses, regard must be had for the realities. If we take the appellant's testimony that nearly 19 acres of their land were taken for the right of way and for the excavated material (a preposterous area) and accept their value of $50 an acre, we have only $950. But it is preposterous that an area of nearly 12 acres could have been irretrievably destroyed. And the valuation $50 an acre represents an offer made a year before 1930 and during the days of prosperity. Moreover, it included minerals, timber, and improvements on a large body of land. The surface value of 19 acres returned for taxation was about $2.30 an acre, or $43.70. Of course, the values returned for assessment are not conclusive, but they do have evidential value. Davidson v. Commonwealth ex rel. State Highway Commission, 249 Ky. 568, 61 S. W. (2d) 34. It is a wide spread between $2.30 an acre for the fee in the surface and $210 an acre for an easement in that surface as allowed by the jury.

Giving due consideration to the evidence pertaining to the diminution of the value of appellees' entire property by reason of the cutting off of their 150 acres, and all other facts and circumstances and opinions, we unhesitatingly reach the conclusion that the verdict for

$4,000 is flagrantly against the evidence and should be set aside. Commonwealth v. Combs, 244 Ky. 204, 50 S. W. (2d) 497.

The judgment is reversed.