## Bringardner Lumber Co. v. Knuckles et al.

May 12, 1939.

CLEON K. CALVERT, JAMES H. JEFFRIES, WALTER B. SMITH, JOHN B. BLACKBURN and J. B. SNYDER for appellant.

GOLDEN & LAY, D. M. BINGHAM and R. L. POPE for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

This is the third appeal of this case. The opinions on the two former appeals are reported in 253 Ky. 292, 69 S. W. (2d) 345, and in 269 Ky. 567, 108 S. W. (2d) 511, where a full statement of the facts may be found. As grounds for reversal, appellant insists the court erred in overruling its petition for a change of venue; erred in excluding certain evidence offered by it; and that the verdict is excessive.

The case was heard before Hon. Henry R. Prewitt, special judge, as the regular judge, Hon. James M. Gilbert, had been one of the counsel representing appellees in this case. After due notice, appellant filed its verified petition for a change of venue as provided by Section 1094 et seq., Kentucky Statutes, and supported same with seven affidavits. Appellees filed a response thereto which they supported with six affidavits. In substance, the petition alleged appellant could not obtain a fair and impartial trial and should be granted a change of venue because: Hon. James M. Gilbert, the presiding Judge of the Bell Circuit Court, was one of the attorneys for appellees; he had drawn from the wheel the names of the jurors who would try this case; his official prestige, the fact that he had drawn the jurors, together with the political influence of the appellees, and the fact that the second trial had resulted

in an excessive verdict, would prevent the appellant from obtaining a fair and impartial trial. Practically all the affidavits filed by appellant adopted the allegations contained in this petition and concluded with the statement, "the affiant believes appellant could not receive a fair trial."

Appellees' response to the petition for a change of venue stated Judge Gilbert had withdrawn from the case as one of the attorneys representing appellees, and denied the appellees were identified with political or governmental circles in Bell County. The affidavits filed by appellees show that Bell County contains 50,000 population; that appellees live in a remote section of the county, eighteen miles from the county seat, and are not politically powerful; and that it would not be difficult to obtain a jury in Bell County who would give both appellant and appellees a fair and impartial trial.

Judge Prewitt overruled the petition for a change of venue and in making up the jury had the entire venire excluded from the court room, and each juror was examined separate and apart from the others on his voir dire. A panel of eighteen duly qualified jurors was thus obtained from the regular venire of thirty-four with only five persons being disqualified, and from this eighteen, twelve were selected to try the case. We conclude Judge Prewitt committed no error in overruling the petition for a change of venue. The trial judge has a broad discretion in passing on petitions for a change of venue, and this court will not reverse his ruling in the absence of a showing of an abuse of that discretion. Louisville Times Co. v. Lyttle, 257 Ky. 132, 77 S. W. (2d) 432; Thompson's Adm'r v. First Nat'l Bank of Harrodsburg, 234 Ky. 252, 27 S. W. (2d) 978. Many cases could be cited sustaining this rule, but we have selected these two because the Lyttle case is one wherein it is held the trial court abused its discretion in not granting a change of venue in a civil case, while the Thompson case is one wherein it was held there was no such abuse of discretion on the part of the trial judge in refusing to grant a change of venue in a civil case.

When Judge Gilbert withdrew from the case as appellees' attorney, this should have set at rest appellant's fears his official influence might leave the bench and accompany him to the counsel table. Certainly, the fact that Judge Gilbert had drawn the names of the jurors from the wheel at a previous term of the court would not

tend to help the appellees or to harm the appellant in the trial. It is hardly necessary to mention that appellees' affidavits were much stronger and more convincing than appellant's. For on the voir dire of the thirty-four jurors on the regular venire only five were disqualified on account of relationship, or from having formed or expressed an opinion, or from having heard the former jury trial, or for any other reason. This, coupled with the fact that the verdict of the jury on the second trial was only about one-third of the size of the verdict returned on the first trial, convinces us the court did not err in overruling appellant's petition for a change of venue.

Appellant complains of the court excluding the testimony of Henry Hall, who testified out of the presence of the jury that in October, 1931, he offered to lay the switch on the spur track appellant had agreed to build on appellees' land in consideration of them deeding it a right-of-way through their land. On the second appeal of this case, we wrote in 269 Ky. 567, 108 S. W. 511, 512:

> "As finally evolved, through pleading and stipulation, the case became one of the Knuckles family against the lumber company for damages for the wrongful taking of their property for the tram road. It was tried as if it were a condemnation proceeding. * * * It appears, therefore, that the consideration promised to be paid by the lumber company for its right of way failed. Whether that was through the fault of the one or of the other it is now unnecessary to determine."

Thus, it is seen the parties treated this as a condemnation proceeding and eliminated the issue as to the contract, and who breached it. Therefore, the trial judge properly excluded from the jury Hall's testimony.

The jury returned a verdict on the first trial for appellees for $4,000 and on the second appeal we reversed the judgment entered on that verdict because it was excessive. In the instant case the verdict upon which the judgment was entered was $1,500, and appellant insists this is excessive. We think it helpful to dissect this verdict and apply the evidence introduced on the trial to the various facts which must have influenced the jury in reaching the verdict it did. It is admitted seven and one-fourth acres of appellees' land

were taken for the right-of-way, and appellant's witnesses agree with the witnesses for appellees that this land was worth from $35 to $50 per acre at the time it was taken. So it is safe to say the jury could have reasonably valued the land taken at $300. The evidence shows 10 acres of appellees' bottom land was damaged by debris falling from the right-of-way on it and the evidence shows this damage amounted to $10 to $15 per acre. Therefore, the jury could have found the bottom land was damaged in the sum of $100. Appellant's testimony is that it cut from 11,000 to 15,000 feet of appellees' timber; that first class timber was worth $5 per thousand on the stump. While this was not first class timber, we think the jury could have reasonably put its value at $3 per thousand, or $45. Appellees' testimony was to the effect 300 panels of their fence was ruined in the construction of the right-of-way, and it will require 600 panels in fencing the right-of-way. Various witnesses estimated the cost of this fence from sixty cents to one dollar per panel. The jury were justified in allowing appellant seventy-five cents a panel, or $675 on the item of fencing. Adding these figures, we have a total of $1,120 which could represent the actual physical damages suffered by appellees.

In addition to the actual damage the appellees suffered, this right-of-way cut off 150 acres of coal and timber land from the remaining 1,500 acres appellees owned. Under the jury's verdict this would leave $380 for this resultant damage. This right-of-way, so appellees' evidence shows, ran on top of a number four seam of coal from thirty to forty inches thick, which right-of-way is 3,151 feet long and 100 feet wide, and prevents appellees from mining same, or, at least, seriously interferes therewith. Also, the right-of-way seriously interferes with appellees' removing timber from this 150 acres which the evidence shows will cut 2,000 feet to the acre, worth $5 per thousand on the stump. It cannot be said that $380 is an excessive sum for the resultant damage done this 150 acres which the right-of-way cut off from appellees' other lands.

Analyzing the verdict of the jury in this manner convinces us that it was not excessive. Besides the testimony of the witnesses, the jury, by agreement of parties, visited the property with the trial judge and had the benefit of seeing for themselves the damages appellees had sustained, and it is quite likely they formed

some opinion from what they saw as to the extent of these damages. This case was tried as if it were a condemnation proceeding, and we wrote in Commonwealth et al. v. Ball et al., 246 Ky. 584, 55 S. W. (2d) 413, 415:

"The amount of the damages in condemnation proceedings is peculiarly a question for the jury, and its verdict will not be disturbed unless so excessive as to show passion or prejudice, or unless based on estimate unsupported by the physical facts, or so extravagant as to carry with them the improbability of their correctness."

Appellant argues "the finding of this court on the first appeal (evidently meaning the second appeal), as to the value of this property is the law of the case now." There was no finding by this court on the second appeal as to the value of this property, and there could have been none, as fixing the value of property is a province of the jury. The opinion on the second appeal pointed out wherein the $4,000 verdict was flagrantly against the evidence, but, of course, that opinion did not attempt to fix a value of the property taken or damaged any more than we have attempted to fix the value thereof in this opinion. That opinion pointed out from the evidence wherein the $4,000 verdict was excessive, just as we have pointed out from the evidence heard on the second jury trial wherein the verdict was not excessive.

Wherefore, the judgment is affirmed.