# Hartford Fire Ins. Co. v. Webb.

Jan. 12, 1940.

Frank M. Drake and Harlan· E. Judd for appellant.

W. Tanner Ottley for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This action was brought by the appellee, Webb, who will be referred to as the plaintiff, against the appellant, Hartford Fire Insurance Company, which will be referred to as the defendant, to recover $1,200 for the destruction of his dwelling house by fire.

Defendant issued plaintiff a farm installment fire insurance policy on November 9, 1934, under the terms

of which it insured plaintiff's dwelling house against fire for a term of five years from that date. The premium aggregated $86.30, of which $17.26 was paid when the policy was issued and the remaining $69.04 of the premium was evidenced by a note payable in four annual installments of $17.26 due on December 1st of each succeeding four years. The installment due December 1, 1937, was in arrears when the house was entirely destroyed by fire on December 12, 1937. The petition avers that although this installment was in arrears at the time of the loss, the plaintiff received the following letter a few days before the fire, written on defendant's stationery and bearing the signature of its general agent, A. G. Dugan, which letter burned with the house, and in substance it was as follows:

"Chicago, Illinois
"December 8, 1937.

"Policy No. 383720
"Kentucky Fire Policy

"J. R. Webb,
"Burkesville, Kentucky.

"Your insurance premium for the sum of $17.26 due on the above policy; is past due, send check as soon as possible. We will hold your policy in force as we have formerly done until we received your remittance. Not to exceed 30 days from date.

"A. G. Dugan,
"General Agent."

The petition further avers that the defendant had previously accepted premium payments from the plaintiff long after due; that this letter made an unconditional demand upon him for the payment of this premium and waived the payment of same on December 1, 1937, and extended the time of payment for thirty days; that in compliance with the demand contained in this letter, he mailed the company a certified check on December 15, 1937, in payment of the premium due on December 1st, of that year; and although defendant refused to accept this check and returned same, the policy was in full force and effect at the time of the fire. After traversing the material allegations of the petition, defendant's answer pleaded as an affirmative defense that both the policy and the installment note contained a provision to the effect that should the premium note, or any part

thereof, remain past due and unpaid, the policy lapsed and defendant would not be liable for any loss occurring while the premium, or any part thereof, was in default; that the revival of the policy should begin at the time that such past due premium was paid to and received by the defendant at its Chicago office. Defendant further pleaded that any premiums, it may have accepted after maturity, were received in accordance with the terms of the policy.

The trial resulted in a verdict for the plaintiff in the amount sued for, and defendant appeals from the judgment entered thereon because: (1) The court erred in permitting plaintiff and his son-in-law to orally testify as to the contents of the destroyed letter before the existence and the genuineness of the letter was established by competent evidence, and without the evidence of the contents of the letter, defendant was entitled to a peremptory instruction; (2) If the oral testimony as to the contents of the destroyed letter were admissible, defendant's evidence conclusively shows no such letter was ever written by any officer, agent or employee of the defendant, hence, the verdict is flagrantly against the evidence.

While the defendant argues there is only one question in this case, to-wit, whether it had waived the suspension of the policy by reason of the alleged letter, the plaintiff contends there are four questions involved: (a) Waiver; (b) the defendant made an unconditional demand for the payment of the note; (c) it granted plaintiff an extension of thirty days in which to pay the premium; (d) an endorsement on the original note showed the premium had been paid on March 29, 1937. The alleged unconditional demand and the alleged thirty day extension both enter into and constitute the waiver, and if plaintiff's claim of payment is disposed of there will be no difference between the parties as to the issue involved on this appeal. Plaintiff does not plead payment on or before maturity of the premium due December 1, 1937, but expressly pleads payment thereof on December 15, 1937, and testified that the payment he made on March 29, 1937, paid the premium installment due December 1, 1936. Defendant's proof is conclusive that the payment on March 29, 1937, was in satisfaction of the installment due December 1, 1936. With no plea of payment and with both plaintiff's and defendant's evidence showing this installment was not

paid on or before December 1, 1937, we will dismiss this point without further consideration. This leaves the case with but one question, and that is: Did defendant waive the suspension of the policy by reason of the alleged letter?

We have written many times that a provision in a policy which suspends it while the premium is unpaid is valid; and should a loss occur while a premium is in default, the company is not liable where no waiver or estoppel appears, Home Insurance Company v. Westerfield, 266 Ky. 494, 99 S. W. (2d) 464, and cases cited therein. The plaintiff admits this is the correct rule, but contends that the alleged destroyed letter waived the suspension of the policy. This letter expressly waived the suspension of the policy for thirty days and the decisive factor in this case is to determine whether the testimony of the plaintiff and his son-in-law, Jack Jones, established that such a letter was written by A. G. Dugan, the general agent of the defendant. The testimony of both the plaintiff and of Jones is that they were familiar with the signature of Dugan from having seen it on the hail clause attached to the policy, and that the signature of A. G. Dugan on the destroyed letter was the same as the signature of A. G. Dugan appearing on the hail clause.

Section 1649, Kentucky Statutes, permits the comparison by witnesses of a questioned signature with a known genuine signature under the guards and conditions outlined in the statute to determine whether the disputed signature is genuine. Courts have recognized the weakness of such evidence when the witness was a handwriting expert. Strode v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313; Polley v. Cline's Ex'r, 263 Ky. 659, 93 S. W. (2d) 363. We have no expert witnesses testifying in this case, but here the two witnesses, who testify the signature on the purported letter is the same as the signature on the insurance policy do not attempt to show they were in any way qualified to give such an opinion. They made no comparisons between the two signatures, did not describe them, did not state in what particular the signature on the alleged letter resembled the signature on the insurance policy, and gave no facts upon which they based their naked assertion that the two signatures were the same. One of these witnesses was a doctor, and the other was his son-in-law, and the record is silent on their familiarity with

handwriting and their ability to identify signatures. Nor do they say how many times they had seen the signature of Dugan, or how familiar they were with it, or how long it had been since they had seen his genuine signature. Courts have likewise recognized the weakness of such evidence of witnesses having no special qualifications or training which enables them to identify handwriting. Referring to such testimony as is now before us we said in Pioneer Coal Company v. Polly, 208 Ky. 548, 271 S. W. 592, that it was entitled to but little weight.

It is significant that in a letter written defendant on December 30, 1937, by Mr. Ottley, attorney for plaintiff, no mention was made of the letter destroyed in the fire. Plaintiff's claim rested solely upon this alleged letter and Webb testified he told his attorney the substance of it, the day after the fire, yet his attorney made no reference to such destroyed letter when he wrote defendant in reply to his letter declining liability because of the lapse of the policy.

The evidence of the defendant is that Dugan never wrote this or any other letter to the plaintiff and that in performing his duties as general agent, he had no connection with the collection of installment notes and never corresponded with policy holders. L. G. Warder, with the title of assistant general agent, was in charge of the farm department and Warder testified he never wrote this letter, or a similar one, and that Mrs. Lalah Kelley was in charge of note collections. Mrs. Kelley testified she never wrote this letter as did Miss Anderson and Miss Erickson, both of whom worked under Mrs. Kelley in the farm note collection department. With the depositions of these three ladies are filed the records they kept of plaintiff's note account upon which are entered records of all notices mailed plaintiff, which record shows the only notices mailed him were a printed form on November 12, 1937, with the name of A. G. Dugan, General Agent, appearing in print thereon, and printed notices mailed him December 16, 1937, and January 6, 1938, notifying plaintiff his premium was in arrears. The name of A. G. Dugan did not appear on either of these last two notices, they being mailed under the name of the assistant general manager, L. G. Warder. Mrs. Kelley further testified that had such a letter been written to the plaintiff, a copy of it would have been pasted on the back of his application and her files

showed no such letter was pasted thereon, nor did they show where any had been removed therefrom. H. L. Allen, an examiner in the office, Walter Clevenger, an assistant examiner, Herbert W. Hinze, an accountant, and A. C. Oesterreich, who handled all correspondence relative to losses, all testified they had not written such a letter to the plaintiff. Several of these witnesses testified that such a letter would have been in opposition to and disrupted the fundamental policy of the company in handling its farm business. They further testified no printed notices or forms containing any such thought or idea as expressed in the purported letter were mailed to the plaintiff. With the deposition of Mrs. Kelley, copies are filed of all notices which are sent policy holders in the farm department in arrears in their premium payments, and a careful reading of these notices convinces us that plaintiff could not have confused the contents of any of them with what he testified was contained in the letter he claims was burned with his house. The evidence introduced on behalf of defendant that this alleged letter was not written by Dugan or any officer or employee of defendant is unequivocal, definite and certain and it is supported by the records of the company which make it clear and convincing

The plaintiff cites many cases to the effect that the jury is the sole judge of the evidence and that this court will not disturb the verdict of the jury although we may think the evidence preponderates against the verdict. It is true we will not disturb a verdict merely because the evidence preponderates against it, but where the verdict is flagrantly or palpably against the evidence, as shown by this record, we will not hesitate to set it aside. Pioneer Coal Company v. Polly, supra; Bringardner Lumber Company v. Knuckles, 269 Ky. 567, 108 S. W. (2d) 511; Consolidated Coach Company v. Clark, 276 Ky. 156, 123 S. W. (2d) 276.

Having reached the conclusion the verdict is flagrantly against the evidence and that the case must be reversed for that reason, we turn to defendant's first ground for reversal, that is, as there was only a scintilla of evidence that Dugan's name was signed to the letter, its motion for a peremptory instruction should have been sustained. In Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877, this day decided, the scintilla rule has been abolished and we there held where a verdict must be set aside as being palpably or flagrantly

against the evidence, the court should not submit the case to the jury, but should direct a verdict for the defendant. With the scintilla rule no longer in effect in this state, should plaintiff's testimony relative to Dugan's signature on the alleged destroyed letter be no stronger than it was on the first trial, the court should direct a verdict in favor of the defendant.

The judgment is reversed for proceedings consistent with this opinion.