**TROUTMAN v. MUTUAL LIFE INS. CO. OF NEW YORK.**

No. 8728.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1942.

George S. Wilson, Jr., of Owensboro, Ky. (L. P. Tanner, of Calhoun, Ky., and Wilson & Wilson, of Owensboro, Ky., on the brief), for appellant.

Robt. Lee Blackwell, of Louisville, Ky. (Wm. Marshall Bullitt, Donald Q. Taylor, and Bruce & Bullitt, all of Louisville, Ky., on the brief), for appellee.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The district court directed a verdict against appellant, named beneficiary in a policy of insurance issued by appellee upon the life of her deceased husband. Her action was brought to recover double indemnity to be payable "upon receipt of due proof that the insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, except in the case of drowning or asphyxiation, there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days after the date of such injury. * * *"

The insured had been in ill health and under the care and treatment of physicians for some seven or eight years. For several years immediately preceding his death, he had received total and permanent disability insurance benefits under the policy. In 1933, his attending physician had made a diagnosis of chronic cardiac asthma with hypertrophy.

On October 12, 1935, while driving his automobile at about 25 miles per hour, the insured met in head-on collision another automobile traveling at approximately the same rate of speed. In the impact, his chest struck the steering wheel with sufficient force to bend the wheel. A motorist, who drove up to the scene of the accident, took the insured and his wife, the appellant, to Dr. Moore, who was one of the insured's attending physicians. Upon discerning a bruise on the insured's chest, the doctor advised an X-ray examination, but subsequently received no report upon his recommendation.

The insured died on November 26, 1935, 45 days after the accident. Dr. Moore certified in writing to the appellee insurance company that, at the time of the accident, he had not considered the slight bruise on the chest of decedent to be serious; and that first-aid examination had revealed nothing which could have caused his patient's death. On the witness stand, the doctor adhered to his previously expressed opinion, qualified by the condition that he had lacked the aid to diagnosis which an X-ray examination would have afforded. He testified, further, that he could not answer correctly a propounded hypothetical question as to the cause of the insured's death, unless he had treated the man from the time of the accident to the date of his death. This he had not done having been succeeded by Dr. Westerfield as attending physician.

In testifying as an expert, Dr. Moore described asthma as a congestion of the air cells, which can cause death if the congestion is extensive enough to cause solidification of the lung. Viewing the physician's testimony in entirety, no reasonable inference may be drawn that traumatic injury independently and exclusively caused the death of the insured.

Dr. Westerfield, to whom the insured was taken by a relative a day or two after the accident, also ordered an X-ray examination. Dr. Gillim performed this service; but there is no evidence in the record as to what was revealed. Later, the insured was taken to Dr. Shocklee, an osteopath, who taped his chest. The reason for this measure, however, does not appear in the evidence. Appellant states in her brief: "Unfortunately both the doctor who made the X-Ray and who taped the chest are dead, making it impossible to secure the X-Ray for examination and interpretation or for us to secure the testimony of the doctor who taped the chest to ascertain just why it had been taped."

From lay testimony it appears that, prior to the accident, the insured was in bad health and did no regular farm work, but managed his farm and did chores such as milking cows, feeding and attending to chickens, and drawing and carrying water from a well. After the accident, he

would complain that his chest hurt and would hold his hand to his side. His activities lessened and he appeared to be "in the dumps." Before the accident, he seemed to be improving in health. He drove his car for short distances. After the accident, he became gradually worse and ceased driving his automobile. His shortness of breath was observed by certain witnesses. "Breathing fast," however, was described by Dr. Moore as a symptom of asthma.

There was no other medical testimony than that given by Dr. Moore, except the testimony of Dr. Howell J. Davis, who never attended the insured; indeed, did not even know him. His testimony was purely hypothetical and was most speculative in character. His opinion testimony was to the effect that congestion of the lungs sufficient to cause death can ensue from a chest blow; that a healthy person can sustain such fatal injury; that there can be such serious congestion of lungs in a person suffering from specified ailments as might cause death independently of those ailments; that congestion could have been produced by the character of the injury he was asked to assume, even in a person suffering from no ailment.

That a verdict cannot properly stand upon testimony amounting to conjecture, based on the possibility that a thing could have happened without proof that it did happen, is the law of Kentucky. Cincinnati, N. O. & T. P. Ry. Co. v. Humphrey's Adm'r, 281 Ky. 432, 442, 136 S. W.2d 537; Louisville & N. R. R. Co. v. Mann's Adm'r, 227 Ky. 399, 13 S.W.2d 257.

Moreover, hypothetical questions put to expert witnesses must reflect the true state of facts in evidence. New York Life Insurance Co. v. Long, 211 Ky. 656, 660, 661, 277 S.W. 978. The opinion of Dr. Davis that the blow received by the insured was sufficient to cause his death was valueless, because it was based on the erroneous assumption that the insured was confined to his bed for 45 days preceding his death. It is established by the record that the insured took to his bed only the day before he died.

Holding that mere supposition that fatal disease resulted from an accident will not support a judgment in favor of the beneficiary of an accident policy, the Court of Appeals of Kentucky reversed the trial court for error in not directing a verdict in National Life & Accident Insurance Co. v. Kendall, 248 Ky. 768, 59 S.W.2d 1009.

It is well settled in Kentucky, as in this circuit and elsewhere, that a jury is not permitted to speculate upon its verdict. Bahre v. Travelers' Protective Ass'n of America, 211 Ky. 435, 439, 277 S.W. 467. Suspicion or conjecture as to the cause of the death of an insured is insufficient to constitute evidence for proper submission of a case to the jury. North American Acc. Ins. Co. v. West, 245 Ky. 316, 53 S.W.2d 692.

In the case at bar, the death certificate was signed by Dr. A. A. Westerfield. This physician certified that he attended the deceased from November 12, 1935, to November 26, 1935, and last saw him on the date of his death (November 26, 1935); that the principal cause of death and related causes of importance in order of onset were "congestion of lung" and "other complication"; and that the contributing cause of importance not related to the principal cause was an "automobile accident."

The printed form of death certificate, drawn in compliance with 2062a-7, Kentucky Statutes and furnished and used by the Bureau of Vital Statistics, Department of Health, Commonwealth of Kentucky, included the direction that "if death was due to external causes (violence)," [listing an accident as such] answers should be made stating, in case of accidents, the date, place, manner and nature of the injury. This part of the form was not filled in by Dr. Westerfield. The reasonable inference is that he did not consider the death of the insured as due to accident.

Kentucky law requires that a certified copy of the death certificate "shall be prima facie evidence in all courts and places of the facts therein stated" (Kentucky Statutes, Sec. 2062a-21). See Ford v. Commonwealth Life Ins. Co., 252 Ky. 565, 67 S.W.2d 950; Fidelity Mutual Life Ins. Co. v. Hembree, 240 Ky. 97, 41 S.W. 2d 649.

Applying the statute to a case where the cause of death on a death certificate was given as suicide, and the finding of a coroner's jury was to the same effect, the Court of Appeals stated that, upon careful examination of three volumes of evidence, nothing had been found "to overcome these things, on which anything more than a suspicion can be rested," and held that the insurer was entitled to a directed verdict in

an action on a policy of life insurance, which did not cover death by suicide except to the extent of a return of premiums paid. Prudential Ins. Co. of America v. Ashley, 265 Ky. 281, 96 S.W.2d 766, 767.

The burden of proof rested upon appellant to show that the death of her husband resulted directly from "bodily injury effected solely through external violent and accidental means independently and exclusively of all other causes." See Standard Accident Ins. Co. v. Strunk, 220 Ky. 256, 260, 294 S.W. 1085; Aetna Life Ins. Co. v. Bethel, 140 Ky. 609, 131 S.W. 523.

A verdict should be directed against the party upon whom rests the burden of proof, where from the evidence the injury claimed could with equal probability have resulted from a cause upon which liability could not be predicated. Hughes v. Cincinnati, etc., R. R. Co., 91 Ky. 526, 16 S.W. 275; Wigginton's Adm'r v. Louisville Ry. Co., 256 Ky. 287, 75 S.W.2d 1046; City of Ludlow v. Albers, 253 Ky. 525, 69 S.W.2d 1051.

With the burden of proof resting upon her, appellant's failure to call Dr. Westerfield as a witness to explain away, if possible, the presumption raised against her by the death certificate signed by the doctor justifies the inference that the testimony of Dr. Westerfield, if adduced, would not have sustained her position. See Rice v. Rice, 243 Ky. 837, 846, 847, 50 S.W. 2d 26; McDonough v. McGowan, 165 Ky. 425, 429, 177 S.W. 277; Star Mills v. Bailey, 140 Ky. 194, 199, 200, 130 S.W. 1077, 140 Am.St.Rep. 370.

Appellant cites certain opinions of the Court of Appeals of Kentucky in support of her argument that a verdict for appellee should not have been directed. Among her cited cases are included: Guardian Life Ins. Co. v. Robison, 278 Ky. 678, 129 S.W.2d 192; Pacific Mutual Life Ins. Co. v. Cash, 224 Ky. 292, 6 S.W.2d 239; Prudential Ins. Co. of America v. Grant, 226 Ky. 372, 10 S.W.2d 1073; Nashville Life & Acc. Ins. Co. v. Cox, 174 Ky. 683, 192 S.W. 636; Provident Life & Accident Co. v. Watkins, 256 Ky. 645, 76 S.W.2d 889; Kentucky Central Life & Acc. Ins. Co. v. Jones, 247 Ky. 432, 57 S.W.2d 72; Fidelity & Casualty Co. of New York v. Cooper, 137 Ky. 544, 126 S.W. 111. It would seem idle to distinguish these cases from the instant case, or even to discuss them, for the reason that they were decided when the "scintilla rule" prevailed in Kentucky.

This rule was expressly abolished by the decision of the Court of Appeals of Kentucky in Nugent v. Nugent's Ex'r, decided January 12, 1940, 281 Ky. 263, 135 S.W.2d 877. Stating that the scintilla rule had been abandoned in most jurisdictions and that "dead wood must be trimmed from a tree lest its growth be endangered," the court classified the scintilla rule as "dead wood" and abandoned it. 281 Ky. op. 270, 135 S.W.2d op. 881. The rule of practice to replace the scintilla rule was declared for future guidance as follows: "When the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but should direct a verdict for the defendant." 281 Ky. op. 275, 135 S.W.2d op. 883.

In Hartford Fire Ins. Co. v. Webb, 281 Ky. 276, 281, 282, 135 S.W.2d 883, 886, it was said: "In Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S.W.2d 877, this day decided, the scintilla rule has been abolished and we there held where a verdict must be set aside as being palpably or flagrantly against the evidence, the court should not submit the case to the jury, but should direct a verdict for the defendant."

From the foregoing review of the Kentucky decisions, it is apparent that Kentucky law, pointing to the propriety of a directed verdict in the instant case, conforms to the settled rule of this circuit. Our court has repeatedly held that to submit to a jury a choice of probabilities is but to permit them to conjecture or guess, and evidence which presents no more than such choice is not substantial. Parker v. Gulf Refining Co., 6 Cir., 80 F.2d 795, 796; O'Mara v. Pennsylvania R. Co., 6 Cir., 95 F.2d 762, 763; Gulf Refining Co. v. Mark C. Walker & Son Co. (Charles Weaver & Company v. Gulf Refining Company), 6 Cir., 124 F.2d 420, decided January 8, 1942.

Viewing all the evidence in the case in the light most favorable to appellant, we have reached the conclusion that the district court properly directed a verdict for appellee.

The judgment is affirmed.