## Stacey et al. v. Stoner et al.

(Decided Oct. 22, 1935.)

EATON & BOYD for appellants.

R. L. MYRE and HOLLAND G. BRYAN for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

William Stoner, suing as the next friend of his infant son, William Johnson Stoner, who was nine years old, brought this suit in the McCracken circuit court to recover damages for personal injuries sustained by the infant appellee, William Johnson Stoner, which resulted from a collision of a bicycle on which he was riding and the automobile being driven by the appellant Mrs. L. D. Stacey. The action is based upon the alleged negligence of Mrs. Stacey. A trial before a jury resulted in a verdict and judgment thereon for $2,000 for the plaintiff, and to reverse that judgment this appeal is brought.

It is urged for a reversal, among other things, that the evidence offered for the plaintiff does not show any negligence of Mrs. Stacey and that their motion for a directed verdict should have been sustained. Mrs. Stacey was driving her husband's car northwardly on Ninth street and William Johnson Stoner was riding his bicycle eastwardly on Broadway street in Paducah, Ky., and the accident occurred at the intersection of these two streets. William Stoner, the father of the infant, was the first witness introduced for plaintiffs, but he did not see the accident and his evidence does not relate to how it happened. The infant, William Johnson Stoner, testified that he could not remember anything about how the accident occurred and his evidence gives no light on the issue. Dick Devanie, Terry Devanie, and Graves Hendon were at a filling station on a corner near the intersection at the time of the accident. Dick Devanie testified that he did not actually see the accident, but just before the collision his brother, Terry Devanie, made the remark that "There is going to be a wreck— that car is going to hit that boy * * *"; but when he looked the automobile and the bicycle had passed behind a truck which obstructed his view and he did not see the collision. Terry Devanie said he saw Mrs. Stacey going north on Ninth street and the boy on the bicycle was going towards town (east) on Broadway and it looked to him like neither of them saw the other and was not going to stop and he made the remark to his brother that he thought they were going to collide, and they passed behind a truck and he did not see the collision. He said that the automobile and bicycle were both running at a moderate rate of speed. Graves Hendon tes-

tified that he saw the boy and Mrs. Stacey approaching the intersection of Ninth street and Broadway at the place of the accident and that the green light was in Mrs. Stacey's favor. He was asked:

"Q. How do you know that Mrs. Stacey had the green light? A. I saw the light.

"Q. After the accident? A. Before.

"Q. How long before? A. Just at the time.

"Q. Do you know whether it was changed? A. It was green. * * *

"Q. You glanced up and saw the light was green and you don't know when it changed? A. It was green when she crossed the street. * * *

"Q. Have you any idea of the rate of speed she was going in this automobile? A. Not over 20 miles an hour.

"Q. Are you positive of that? A. Yes, sir.

"Q. Have you any idea of the rate of speed the boy was riding? A. No, sir."

Later the witness stated that the speed of the automobile and the bicycle were about the same, and that they were close together when he first saw them. He was asked on cross-examination about the traffic light and he again said that Mrs. Stacey had the green light and was going north and the red light was facing the boy as he was going east on Broadway. He said that at the time of the collision Mrs. Stacey immediately applied her brakes and the car "stopped quick."

This was all the evidence offered by the plaintiffs as to how the accident occurred.

This evidence shows nothing more than that Mrs. Stacey, while operating her car at a reasonable rate of speed, entered the intersection with the traffic light (green) in her favor and her automobile and the bicycle on which the boy was riding collided, resulting in the injury complained of.

It is the well-established rule that negligence will not be presumed from the fact only that an accident occurred or that an injury has been sustained. To authorize the submission of a case to the jury, the burden is on the plaintiff to show (a) that the defendant was negligent, and (b) that such negligence was the proxi-

mate cause of the injury. It is our view that the evidence for the plaintiff utterly failed to show either that Mrs. Stacey was negligent, or that the injury complained of was the proximate result of any negligence.

In the case of Wigginton's Adm'r v. Louisville Ry. Co., 256 Ky. 287, 75 S. W. (2d) 1046, 1051, it is said:

"It is an accepted rule if, on the question of negligence or no negligence, the evidence is equally consistent with either view, i. e., the existence or nonexistence of his negligence, the defendant is entitled to a peremptory instruction."

Also, see Sabiston's Adm'r v. Otis Elevator Co., 251 Ky. 222, 64 S. W. (2d) 588.

To warrant the submission of a case to the jury, there must be some evidence of probative value tending to show negligence, and that such negligence was the proximate cause of the injury. But the jury must not be left to conjecture and speculate as to how an accident occurred. Kidd v. Modern Amusement Co., 252 Ky. 386, 67 S. W. (2d) 466, and cases therein cited. Many other cases and authorities could be cited on this question, but the rule is so well known that an elaborate citation of authority is unnecessary.

Our conclusion is, therefore, that the court erred in failing to sustain appellants' motion for a directed verdict.

These conclusions obviate the necessity of passing on other questions raised as they may not occur on another trial, if one is had.

The judgment is reversed and remanded for proceedings consistent herewith.