## Southeastern Greyhound Lines v. Davis.

Feb. 24, 1942.

R. W. Keenon and Hiram H. Owens for appellant.

J. William Jordan and Victor A. Jordan for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellee and plaintiff below, J. Leonard Davis, lives in Barbourville and for several years has maintained a law office in Harlan. It is his custom to leave Barbourville on Monday morning for Harlan and to return to his home the latter part of the week. The basis of his action for $10,000 against the Southeastern Greyhound Lines is that on the 27th day of November, 1939, he purchased a ticket from Barbourville to Harlan, with the privilege of stopping over at Pineville; that he got off the bus in Pineville and when he offered himself as a passenger again the agents and servants of the company wrongfully and negligently placed him in a bus which was cold and without heat, and caused him to remain in the cold bus for approximately one hour; that by reason thereof he was caused to become sick and suffer great mental and physical pain and injuries; and that as a result thereof his health has been greatly and permanently injured and his power to earn money has been greatly and permanently destroyed. The company's answer consisted of a denial and a plea of contributory negligence. The trial resulted in a judgment of $1,000 in favor of Davis; hence this appeal.

The Company insists that the judgment should be reversed because (1) the court erred in overruling its motion for a change of venue; (2) error was committed in admitting incompetent testimony, in refusing to admit competent testimony, and in overruling exceptions to certain depositions; (3) the court erred in overruling the company's motion for a peremptory instruction; (4) the court erroneously instructed the jury; and (5) the verdict is excessive and against the weight of the evidence.

The motion for a change of venue was filed on the day the case was called for trial. The affidavit in support of it set forth that Davis was formerly the county attorney of Knox County; that his father was an official of the county; that he and his brother had taught school

in the county; and that for these reasons it would be impossible for the company to obtain a fair trial before a jury composed of Knox county citizens. Aside from the fact that the motion for a change of venue was not made in compliance with Section 1095 of the Statutes, we do not think that the trial court abused its discretion in overruling the motion. As set out in Bringardner Lumber Company v. Knuckles, 278 Ky. 356, 128 S. W. (2d) 727, the trial court has broad discretion in passing on motions for a change of venue, and we will not reverse its ruling in the absence of a showing of an abuse of that discretion.

The second complaint is directed primarily to a contention that there was no evidence showing that Davis' alleged condition was caused by the ride on the bus, and therefore the only competent proof was as to his alleged suffering while he was riding on the bus between Pineville and Harlan. We are substantially in accord with that view, as will be shown hereinafter.

The third ground urged for reversal calls for an examination of the evidence. Davis testified that: November 27, 1939, was a very cold day; on this particular day he wore a light overcoat, a suit of clothes with quarter lining, low shoes and summer underwear; he walked from his home in Barbourville to the bus station, a distance of about a quarter of a mile; the bus which carried him from Barbourville to Pineville was comfortable; he got off of it in Pineville; when he returned to the bus station and attempted to get back on the same bus he was told that it was crowded and that he would have to take another one; he got on this bus and it was cold; upon his complaining a mechanic attempted to fix the heater but he could feel no heat coming from it; the bus remained in the station about 20 minutes; he made no effort to get off the bus and go into the waiting room, which he knew was heated; he knew the departure of busses was announced; there were four or five persons on the bus when it left Pineville; he was cold and jerky when he reached Harlan; he went to a drug store and got some aspirin and then went on to his office, where it was his custom to sleep, and stayed there several days; he was uncomfortable during this period and had a severe cold; he returned to Barbourville the middle of the week; he was forced each night to get up several times with his kidneys; Dr. Davies treated him for the "flu"; and

the same doctor had treated him in 1935 and 1937, the latter time for the "flu." On cross-examination he admitted that he had several insurance policies with permanent disability provisions in them; that a suit was pending against one of the companies for disability benefits; that claims had been made against two others on the ground that his health had been permanently affected by reason of the cold ride on the bus; and that, notwithstanding his statement that he was disabled to practice law, he had continued to keep his office open and retained a stenographer most of the time.

Davis offered the deposition of D. L. Davies, a brother of Dr. Davies, who frequently rode from Barbourville to Harlan on the same bus with him. This witness said that he remembered being on a bus when Davis was a passenger, that the bus was cold and that he recalled hearing Davis or someone else complain about the coldness; that he was dressed for cold weather and did not suffer any ill effects from his ride; that the bus stayed in Pineville about 20 minutes; that he knew about the waiting room; that there were at least 14 passengers on the bus at the time he recalled; and that he could not name the exact date of the occasion. The deposition of Addison Fuson was offered and he said that he remembered being on a bus in cold weather and that he thought Davis was on the bus on one such occasion; but that he could not fix the date.

We have examined Dr. Davies' testimony very carefully. At the outset, we say without reservation that we do not think that this doctor's testimony substantiates Davis' allegations as to the cause of his alleged illness and disability. The other medical testimony does not strengthen his case. In brief, Dr. Davies said that: He had treated Davis in 1935, 1937 and 1939; on the latter two occasions he had treated him for the "flu" and on all three occasions he had albumin in his urine in about the same amount (four plus); he had nephritis, sometimes referred to as Bright's disease; he could not say Davis was permanently disabled, nor could he say his condition was caused by riding on the cold bus; and the disease of influenza is caused by a germ.

The circuit judge, a magistrate of Harlan County, the police judge of Harlan, and the county judge of Harlan County testified that Davis had not practiced in their respective courts since 1939, or at all. There is proof,

however, that Davis practiced before the Workmen's Compensation Board, or assisted others in carrying on such practice, and that on occasions he assisted attorneys in the taking of depositions. We have noted also that he has continued to keep his office open in Harlan and to keep a stenographer employed there most of the time.

The company offered the deposition of a former law partner of Davis wherein he said that Davis had told him that he had albumin in his urine and that on two occasions he had asked his partner to give him a specimen of his urine so that he (Davis) could use it in order to pass a physical examination to obtain insurance; that Davis assisted in the trial of an insurance case; and that in so far as it appeared to him there was nothing the matter with him. The company offered proof also to the effect that Davis had participated in the trial of workmen's compensation cases since the time of his alleged illness. Walter Fitch was driving the bus on November 27, 1939, and he said that there was nothing unusual about the trip; no complaints were made; prior to the time the bus left Pineville it was in a closed and heated garage; there was a waiting room in front of the bus station which was warm; he called the bus; he did not get cold on this particular trip; and his records show there were three passengers on the bus on the trip out of Pineville. Another witness testified that the heater on the bus in question was in good condition on November 27, 1939, and that the bus station and the garage were warm.

We think it is clear from the foregoing review of the testimony that Davis failed utterly to make out his case of permanent injury. Furthermore, we do not think the proof shows that his alleged illness was the direct and proximate result of riding on the bus which he said was cold. It would be mere speculation to say that the case of "flu" which he had after November 27, 1939, and his aggravated kidney condition were the result of his riding on the cold bus. He gives no satisfactory explanation of why he remained on the bus, which he said was cold, for the 20 minutes it was in the station at Pineville, and if he did catch cold on the occasion he might as easily have done so at that time as when the bus was in progress between Pineville and Harlan. Furthermore, we have noted that Davis said that he walked about a quarter of a mile from his home in Barbourville to the bus

station early in the morning; that he was dressed in light clothes; and that he left the warm bus at Pineville and went out into the cold. Davis v. Allen, 199 Ky. 442, 251 S. W. 194; Kidd v. Modern Amusement Company, 252 Ky. 386, 67 S. W. (2d) 466; Stacey v. Stoner, 260 Ky. 848, 86 S. W. (2d) 1006; City of Ashland v. Burley, 265 Ky. 176, 96 S. W. (2d) 581. The most to which Davis was entitled under the proof, as we weigh it, was to have his case submitted to the jury upon the question of suffering which he might have endured because of the cold bus while it was in progress between Pineville and Harlan.

It is obvious from what has been said that the instruction which permitted the jury to find anything for Davis for impairment of his power to earn money was erroneous, since there was no proof to warrant the giving of such an instruction.

The first instruction placed upon the company the duty of exercising the highest degree of care to keep its bus reasonably comfortable and warm in cold weather. We believe this instruction to be erroneous. Stanley on Instructions, Section 272, and cases cited thereunder. The company is required to exercise ordinary care to keep its busses reasonably and comfortably warm in cold weather. Davis stresses the recent cases of V. T. C. Lines v. Taylor, 281 Ky. 83, 134 S. W. (2d) 991 and Fowler v. Randle, 284 Ky. 164, 143 S. W. (2d) 1049, and others to the same effect, which hold that a common carrier must exercise the highest degree of care exercised by prudent and skillful persons in the operation of its vehicles for the safety of its passengers. Speaking generally, those cases deal with the actual operation of the vehicle in which the passenger is riding, as, for instance, the driving of the taxicab or the bus. There the driver must exercise the highest degree of care for the safety of his passengers while he is in the actual control and operation of the mechanism at his command, just as must the engineer of a train, or the pilot of an airplane.

It is unnecessary, in view of the foregoing, to discuss the question of whether the verdict is excessive or against the weight of the evidence.

Wherefore, the judgment is reversed, with directions to set it aside and for proceedings consistent with this opinion.