## BIG SANDY REALTY CO. v. STANSI-FER MOTOR CO.

Court of Appeals of Kentucky.
Dec. 19, 1952.

Woodward, Hobson & Fulton, Louisville, Joe Hobson, Prestonsburg, for appellant.

Howard & Combs and Fred G. Francis, Prestonsburg, for appellee.

CULLEN, Commissioner.

Big Sandy Realty Company, a corporation, brought an action against Stansifer Motor Company, also a corporation, to recover money claimed to be due under a written contract alleged to have been made between the two corporations. A jury found for the defendant, and the plaintiff has appealed from the judgment entered on the verdict, dismissing its action.

The contract on which the action was based purported to be signed on behalf of the Realty Company by Harry Malkin, its president, and on behalf of the Motor Company by Ben Stansifer, its vice-president and general manager. The contract recited that the Realty Company was to advance $9,000 to the Motor Company for the purpose of buying and selling automobiles; that the Realty Company, "by their representative, Mr. Harry Malkin," was to receive 50% of the profits, and that Malkin was also to receive $80 per week "as long as this money is in operation with" the Motor Company. The contract acknowledged receipt by the Motor Company of the sum of $2,000. Another document produced by the plaintiff, which was signed only by Ben Stansifer, recited that $4,100 in cash and $4,900 in checks had been received from the Realty Company, and that "this money is to apply to buying and selling automobiles, which Harry Malkin is to get fifty per cent of the proceeds".

The plaintiff sued for the recovery of the original $9,000 mentioned in the contract, plus $2,000 for alleged profits, $150 for expenses, and $480 representing compensation at $80 per week for 6 weeks. The defense was, first, that no such contract ever was executed by Stansifer, and second, that if he did execute the contract it was beyond the scope of his authority as an officer of the defendant corporation and was not binding on the corporation.

The contract was dated June 21, 1949. Ben Stansifer died in August 1949, and this action was brought shortly after his death. Naturally, the death of Stansifer was a handicap to both parties in the presentation of their proof.

A number of grounds of error are asserted by the appellant. We think one of the grounds is well taken, and we will discuss that one first. It has to do with the right of the defendant to question the execution and genuineness of the contract sued on, without having denied the execution and genuineness by affidavit or by verified pleading.

The original petition of the plaintiff referred to the written contract of June 21, 1949, and stated its substance, but the contract was not filed with the petition. The defendant moved that the plaintiff be required "to file herein the alleged written contract sued upon in the petition," and thereafter the plaintiff filed the contract and the receipt. An order was entered filing the two papers, but the order did not state specifically that they were filed as a part of the petition. After various demurrers had been disposed of, the defendant filed an answer consisting of a general denial. Later, an amended answer was filed, alleging Stansifer's lack of authority to execute such a contract on behalf of the defendant corporation. Neither of the answers was verified, and at no time was an affidavit filed denying the genuineness of the contract. After the trial had commenced, the defendant asked permission to verify its answers, which was denied.

The plaintiff objected to the introduction of any evidence on the trial questioning the execution and genuineness of the contract, and asked for an instruction to the effect that the contract must be accepted as genuine. The objections were overruled and the instruction was rejected.

The appellant maintains that it was entitled to have the contract read as genuine, by virtue of Section 527 of the Civil Code and KRS 454.010. The Code section provides that a writing "referred to in, and filed with" a pleading may be read as genuine unless the adversary deny its genuineness by affidavit before the trial is begun. The statute section provides that the execution of a writing "on which a suit or defense is founded" may be denied only by a pleading verified by oath.

The appellee maintains that the contract was not "filed with" the petition and therefore the Code section does not apply. However, we think the effect was the same as if the contract had been filed with the petition. Section 120 of the Civil Code requires that a writing on which an action is founded be filed as a part of the pleading, and it is clear that the motion by the defendant in this case, to require the plaintiff to file the contract, was made in reliance on Section 120. The motion was, in effect, to compel the plaintiff to file the contract as a part of its petition, and we think the filing pursuant to the motion made the contract part of the petition. See Robertson v. Robertson's Adm'r, 174 Ky. 836, 192 S.W. 878.

It may further be observed that the statute section KRS 454.010, does not say that the writing must be filed with the pleading in order to invoke the requirement of verification by the adversary who wishes to deny its execution.

The appellee suggests that the appellant waived the requirement of verification by failing to request a rule requiring verification. However, it was held in Overbee v. Fordson Coal Co., 245 Ky. 94, 53 S.W.2d 210, that failure to demand verification does not constitute a waiver of the right to object to the introduction of evidence denying the genuineness of the writing sued on.

It may be that the appellee was entitled to question the genuineness of the receipt filed with the contract, because it did not purport to be executed by the defendant corporation. But the contract did purport to be executed by the corporation, and in our opinion it was prejudicial error to permit the execution and genuineness of the contract to be attacked by the defendant. However, we will point out that an affidavit denying the genuineness of the contract may be filed upon the return of the case to the circuit court. Robertson v. Robertson's Adm'r, 174 Ky. 836, 192 S.W. 878.

Other grounds of error raised by the appellant require some mention.

■ It is contended that there was error in transferring the case from the Jefferson Circuit Court to the Floyd Circuit Court, and in refusing to retransfer the case to Jefferson County. The action was commenced in Jefferson County, on the ground that the contract was made in that county. After a time, an attachment was issued against property of the defendant at its place of business in Floyd County. The next day, an action was instituted against the defendant, by one of its creditors, in the Floyd Circuit Court, and an attachment was issued in that action. The defendant then procured an order from the Floyd Circuit Court, under Section 210 of the Civil Code, transferring the Jefferson County action to Floyd County. The plaintiff opposed the transfer, on the ground that he could not get a fair trial in Floyd County, and on the ground that the Code contemplates a transfer of the attachment phase of an action only after the main action has been determined on its merits.

Section 210 of the Civil Code does not make any provision for a consideration of the question of prejudice on a motion for transfer, and it specifically provides for a transfer not only of attachments, but "of the actions in which they may have been issued". Therefore the contention of the appellant on these points must fail.

After the transfer of this action to Floyd County, a default judgment was entered in the other action, and the judgment was satisfied and the attachment in that action discharged. The plaintiff in this action then moved to retransfer the action to the Jefferson Circuit Court. It is claimed that the overruling of that motion was error, on the ground that the basis for the transfer having ceased to exist, the Floyd Circuit Court no longer had jurisdiction.

■ We think that the following rule, as stated in 21 C.J.S., Courts, § 93, p. 143, is applicable:

"As a general rule, jurisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction from attaching in the first instance. * * *"

It would not be consistent with an orderly system of justice for actions to be transferred back and forth depending upon the happenstance of events.

■ It is next contended that the court erred in denying appellant's motion for a change of venue from Floyd County. The motion was supported by affidavits to the effect that the principal owner of the defendant corporation was a doctor and county health officer in Floyd County; that he administered to many of the citizens of the county without charge; that he was related to the mayor of Prestonsburg; that he was a man of influence in the county; that the president of the plaintiff corporation, Harry Malkin, was generally disliked in the county, and was referred to as a "foreigner," a "Russian," and a "Russian spy;" and that plaintiff could not get a fair trial in Floyd County. Opposing affidavits on behalf of the defendant were to the effect that there was no widespread sentiment against Malkin; that some people in the county were offended by Dr. Ransdell, chief owner of the defendant corporation, because of the regulations he enforced as county health officer; and that the affiants knew of no reason why the plaintiff could not get a fair trial in Floyd County.

The trial court generally is accorded a wide discretion, particularly in civil cases, in determining applications for change of venue. We are not convinced that there was an abuse of discretion in this case. See Mathis v. Bank of Taylorsville, 136 Ky. 634, 124 S.W. 876; Louisville & N. R. Co. v. Nethery, 160 Ky. 369, 169 S.W. 883; Bringardner Lumber Co. v. Knuckles, 278 Ky. 356, 128 S.W.2d 727; Southeastern Greyhound Lines v. Davis, 290 Ky. 362, 160 S.W.2d 625.

■ The appellant argues that the verdict was not supported by the evidence. We take this to mean that he was entitled to a directed verdict. Without undertaking to detail the evidence, we will say that there was a sharp conflict on most of the points in issue, particularly as to whether the defendant corporation had received any money from Malkin under the alleged contract, or had in any way ratified the

contract. Clearly the case was one for the jury.

There is some argument about the admission of incompetent evidence, particularly that concerning a brief case and a photographic enlargement of the contract. We think the evidence concerning the brief case would have been competent had the defendant been entitled to question the genuineness of the contract, because the purpose of the evidence was to show that Malkin had acquired possession of Stansifer's brief case, containing documents with Stansifer's signature on them. The authenticity of the photographic enlargement was really not subject to question.

The appellant complains that he was not permitted to testify that the money alleged to have been advanced by him had not been repaid. While it is true that an objection to such testimony was sustained at one point, the testimony was admitted in substance at another point. In addition, there was no real issue on the question of repayment. The defendant did not contend that it had repaid the money; its contention was that it never received the money in the first place.

■ It is contended that the instructions were erroneous in submitting to the jury the question of repayment. We think the instructions were erroneous in this respect, and on another trial the question of repayment should not be submitted unless an actual issue is raised concerning repayment.

■ A further claim of error in the instructions is that they erroneously submitted the question of whether the defendant corporation had received money advanced by the plaintiff and used it for its own use. The basis for the argument is that the defendant corporation admitted that it had received two checks from Malkin totalling $4,905, and therefore there could be no jury question concerning the receipt of this amount of money. The fact is, however, that the corporation claimed the two checks were received, not under the alleged contract, but as the purchase price of three automobiles purchased by Malkin from the defendant corporation.

There clearly was a jury issue as to whether this money was received under the contract, or for the sale of the three automobiles.

The instructions also are criticized by the appellant because of their failure to submit the claim of the appellant for expenses and for compensation at $80 per week under the contract. Upon another trial, the court, if requested, should instruct on all issues presented by the pleadings and proof.

■ The appellee maintains that any errors that may have occurred were not prejudicial to the appellant, because the appellee was entitled to a directed verdict. This is on the theory that there was no proof of Ben Stansifer's authority to make the alleged contract on behalf of the defendant corporation, and no proof of ratification of the contract, or acceptance of its benefits, by the corporation. We agree that the authority of Ben Stansifer to make the contract was not established, because there was no proof of express authority, or of apparent authority to make a contract of this nature, or of a "custom of dealing" from which the authority could be implied. However, there is a different situation on the question of ratification or acceptance of benefits. As hereinbefore pointed out, the corporation admitted that it had received checks from Malkin in the amount of $4,905, and had used the money in its business. If, as Malkin claimed, this money was part of the money referred to in the contract, its acceptance and use by the corporation would at least render the corporation liable for the return of the money received. The jury could have believed that the officers and stockholders of the corporation (other than Ben Stansifer) knew that the money came from Malkin in accordance with the contract, in which event the corporation would be bound by the contract by reason of ratification. Or the jury could have found that the money advanced by Malkin was received and used in the business of the corporation without any knowledge on the part of the officers and stockholders as to the source of the money, in which case the corporation would be liable only to repay the money received. We think these

questions were for the jury, under appropriate instructions.

The judgment is reversed, with directions to grant a new trial.

COMBS, J., not sitting.