Virgil MYERS et al., Appellants,

v.

Marion WALKER et al., Appellees.

Marion WALKER et al., Appellants,

v.

Alma MYERS et al., Appellees.

Court of Appeals of Kentucky.

March 13, 1959.

————◆————

Earle M. Nichols (Nichols & Nichols), Madisonville, for appellant Myers.

Maubert R. Mills (Gordon & Gordon & Mills), Madisonville, for appellants Walker & Crabtree.

Earle M. Nichols (Nichols & Nichols), Maubert R. Mills (Gordon, Gordon & Mills), Carroll Morrow (Moore & Morrow), Madisonville, Fred Hume, Providence, William R. Tapp, Madisonville, Clarence Bartlett, Owensboro, Carroll Franklin (Franklin & Franklin), Madisonville, for appellees.

BIRD, Judge.

This litigation arises from an automobile collision that happened in a hollow on State Highway No. 70 in Hopkins County.

Four groups of people are involved in this action.

First, and traveling westward we have the Wilson group, composed of Arthur Wilson and his wife, Christine Wilson. Arthur Wilson was the owner and driver of one car involved in the collision. Christine Wilson was riding with him.

Second, and traveling eastward we have the Myers group, composed of Virgil Myers, his wife, Alma Myers, and his infant daughter, Ann Myers. Alma Myers was the owner and driver of the Myers car which was also involved in the collision. Her husband, Virgil, and their daughter, Ann, were riding with her.

Third, we have the Coal Company group composed of Marion Walker, Glenn Walker and Homer Crabtree, partners doing business as Walker & Crabtree Coal Company who mined coal near the place of the collision and operated trucks from the mine by the place of the collision to a coal tipple.

Fourth, we have the Trucker group composed of Bradley Whitfield, Sypert Bilbro, E. M. Bruce and Earl Hibbs, all of whom operated one or more trucks from the company mine by the place of the wreck to the same tipple.

At this point we shall state facts sufficient to present clearly the circumstances under which the collision occurred.

Highway No. 70, upon which the collision occurred is a hard surfaced road used generally by the public for all kinds of transportation, including the hauling of coal by the Company, the Truckers and divers other persons not involved in this action.

In approaching the place of the collision from either east or west it was necessary to travel downhill.

At or near the top of the hill west of the place of the collision a graveled county road intersects with State Highway No. 70. Over this county road the Company and Truckers operate their trucks from the mine to Highway No. 70. From this road they enter the highway, turn left and proceed downhill by the place of the collision to the tipple where the trucks are unloaded. The Company and the Truckers had been so operating on the day of the collision. On this day it had been raining and, at the time of the collision, the highway was wet and slippery.

It was after dark when the Myers car was driven eastward by the intersection and

down the hill. As it neared the bottom of the hill it turned across the highway into the path of the Wilson car and the two cars immediately collided. The evidence clearly shows that the Wilson car was at all times in its proper lane of traffic.

However, the Myers started action by suing Arthur Wilson and charging him with negligence in the operation of the Wilson car. In the same action the Myers sued the Company and the Truckers, charging them with negligence as follows:

"In the hauling and transportation of said coal by motor truck over said highway, said defendants negligently and carelessly deposited or caused to be deposited on the traveled surface of said highway, which is surfaced with 'black top' or asphalt, near said coal mine, large and heavy amounts of mud, soil and debris, which rendered the same dangerous to the operation of passenger automobiles thereon, particularly if said automobiles were travelling in an easterly direction on said highway, for the reason that the major portion of said deposit is just east of and below the top of a hill, so that it cannot be discovered or seen by the driver of a car travelling east thereon in time to avoid the same, or in time to stop an automobile before striking such heavy deposit."

The Myers sought damages from Arthur Wilson, the Company and the Truckers charging their injuries and losses to the concurring negligence of each and all of them.

The Wilsons by counterclaim, cross-claim and original complaint charged Alma Myers with negligence in the operation of her automobile and charged the Company and Truckers with negligence as did the Myers because of the mud deposits. Appropriate defensive pleadings were filed by all of the parties.

After the testimony offered on behalf of Alma Myers, Virgil Myers and Ann Myers, Arthur Wilson moved for a directed verdict on the complaint of each of the Myers as against him. This motion was sustained and a verdict was rendered for him. A judgment was entered thereon for Arthur Wilson absolving him from liability on each of the Myers' claims.

At the close of all the evidence Alma Myers moved for a directed verdict on the complaints of the Wilsons against her. This motion was overruled.

The Company and Truckers moved for directed verdicts as against all complaints against them. These motions were all overruled and the case was submitted to the jury.

The jury found for Arthur Wilson and Christine Wilson against the Company and Alma Myers and provided for equal payment of damages.

The jury found for Virgil Myers and Ann Myers against the Company group.

The Truckers were exonerated in all actions against them.

Judgments were entered on the verdicts. The Company group appeals from each of the judgments against them. The Myers appeal from all judgments against them.

We shall first consider and dispose of the appeal of the Company.

From the evidence there is no doubt that quantities of mud were carried by the coal trucks of the Company and the Truckers from the mine and county road onto the highway where it fell from the wheels and was deposited on that part of the highway traveled by the Myers. However, the evidence does not show that the deposits were made on the highway exclusively by the Company and the Truck Operators. There is nothing in the evidence to show that any particular truck carried mud upon the highway. Some may have carried mud and some not have carried mud. Mud could likewise have been carried by others living on and driving over the county road

onto Highway No. 70. Others using the highway generally could well have contributed to the deposits on the highway. There is nothing to show that all of the mud or most of it was carried by coal trucks operating from the mine to the tipple but let us assume, however, that the evidence does so show. It is nevertheless the opinion of this Court that the Company, its partners, and each of the Truckers should have been granted a directed verdict as to all complaints against them.

There is no proof in this record that the Truckers were agents or servants of the mine owners. The only testimony on that point is to the effect that each Trucker was paid by the load. We have specifically held that such testimony is not sufficient to establish a master-servant or employer-employee relationship. Sigmon Ikerd Co. v. Napier, Ky., 297 S.W. 2d 917. This being true we find at least six unrelated truckers operating one or more trucks from the mine over the county road and highway to the tipple on the day of the collision and previously. As pointed out there is no way of determining who carried what or how much. A jury will not be permitted to make that determination by speculation or conjecture. In Lowe's Adm'r v. McFarland, Ky., 291 S. W.2d 1, 2, in a similar situation we said:

"Fire clay from the western part of Carter County and some from Rowan County had been hauled in trucks by the appellee to its stockpile or direct to its plant. But there are three or four other fire brick manufactories in the vicinity, and they also have hauled the same kind of material along the highway where the accident occurred. And, as we understand, individuals have done the same thing. Such material frequently spilled from the trucks. No witness testified to having seen the clay fall from the appellee's truck or undertook to say from whose vehicles the material had dropped. It is left to speculation as to whose trucks

had spilled the clay which caused the car in which the decedent was riding to skid or who was responsible for its presence on the road. The court directed the verdict for the Refractories Company because of the speculative character of evidence of responsibility. * * *

"The well established rule that evidence so unsatisfactory as to require resort to speculation or supposition is not sufficient to justify submission of a case to the jury applies with equal force to the identification of a party whose negligence caused the injury. Stacey v. Stoner, 260 Ky. 848, 86 S.W.2d 1006; cf. Wright & Taylor, Inc. v. Ochs, 306 Ky. 396, 208 S.W.2d 52.'"

Under the evidence and the law all of the judgments against Crabtree and Walker Coal Company and Marion Walker, Glenn Walker and Homer Crabtree must be reversed.

Let us next consider the appeals of Alma Myers, Virgil Myers and Ann Myers from the judgment entered on the directed verdict for Arthur Wilson. Answering one question will solve the problem as to each of the appellants. Was there such evidence of negligence on the part of Arthur Wilson as to require a submission to the jury? The proof in this case conclusively shows that Arthur Wilson was operating his automobile on his right side of the highway. There is no proof of excessive speed or of the failure to perform any duty which he owed to the Myers. It is true that Mrs. Myers stated that the Wilson car was a hundred yards away when she began to skid or swerve on the highway. She does not state how far away Wilson was when she got her car into his lane of traffic, but she does say that she was hit "as I whirled around." When asked about Wilson's speed she would not offer to estimate but did say, "I wouldn't say fast." From this testimony, it is apparent that Wilson was close upon

her when she came across the road into his lane. Mention is made of Wilson having the last clear chance to avoid the collision. There is nothing in the evidence to show that Wilson discovered or could have discovered her peril in time to avoid the collision. Considering the weather, the condition of the highway and her own testimony about his speed and her being hit as she whirled around, it is apparent that Wilson had no chance to avoid the collision and resulting injuries. Before the doctrine of last clear chance will be applied it must be shown that he had not only a last chance but a clear chance to avoid the collision after her peril was discovered, and that he negligently failed to do so. Whitesides v. Reed, Ky., 306 S.W. 2d 249, at page 251.

So far as the record discloses there is no proof of negligence either before or after she was placed in a perilous position and the court was correct in directing a verdict for Wilson as against the claims of Alma Myers, Virgil Myers and Ann Myers. The judgment on that verdict for Arthur Wilson must be affirmed.

Finally let us consider the appeal of Alma Myers from the judgment of Arthur Wilson and Christine Wilson wherein each were awarded substantial damages to be paid equally by her and the Company.

She insists that she was not negligent and that, under the evidence, the trial court should have directed a verdict for her on each of the complaints against her.

 It is admitted that, at the time of the collision, Mrs. Myers' car was across the center line of the highway in the wrong lane of traffic. Her mere presence there is prima facie proof of negligence on her part and, to sustain her claim of no negligence, she must show by the evidence that her negligence did not put her there. This she undertakes to do by saying that the muddy and slippery condition of the highway was the sole cause of her presence

on the wrong side of the highway. In other words, she says she skidded over there and that the skidding was not superinduced by any negligent act on her part. This has been held to be a good defense. Arthur v. Rose, 289 Ky. 402, 158 S.W.2d 652; Hunt v. Whitlock's Adm'r, 259 Ky. 286, 82 S.W.2d 364; Atlantic Greyhound Corp. v. Franklin, 301 Ky. 867, 192 S.W.2d 753.

However, there is proof here that Mrs. Myers did not skid across the highway at all. Arthur Wilson testified as follows:

"13. Tell the jury in your own words what happened as you approached the scene that has been identified here as the scene of this collision? A. Well, sir, I started down 70 to Providence to take my wife down there to the doctor, and as I goes over the hill I noticed a car coming, and as I approached the car, I don't remember whether I had started up the grade or not but the car was over on her side of the road, the lady that was driving, *she wasn't weaving or wobbling or anything, and she dropped off the highway and either applied the brakes or cut the wheel of her car and came directly over in my line of traffic before I could get my brake on.*

"14. How suddenly was it she came over in your lane? A. So quick that I didn't have time to get my brake on, and I was driving an Olds 88 with hydramatic.

"15. Did she come across abruptly or gradually? A. Just as square in front as if she was going to park there.

"72. And as you were approaching each other, you say her car suddenly whipped across the road in front of your automobile? A. *No, sir, I said she dropped off the pavement.*

"73. *Did you see her drop off the pavement?* A. *Yes, sir.*

"74. *What part of her car dropped off?* A. *The right front wheel.*" (Emphasis ours.)

There is nothing to show that Mrs. Myers dropped off the pavement because of the slick road. In fact she denies that it happened. It may be fairly inferred from the Wilson statement that Mrs. Myers simply dropped over the edge of the pavement and in trying to get back on the pavement cut suddenly across the road into the path of Wilson's car. There was then an issue of fact to be determined by the jury. The jury found that Mrs. Myers had failed to explain her presence on the wrong side of the road and held that she was negligent. The question was properly submitted to the jury.

■ Mrs. Myers insists further that the case should be reversed because of the erroneous admission of evidence. The testimony about which the complaint is made was not offered by the Wilsons but by the Company. The court permitted Walker and Crabtree, over the objection of· the Myers, to testify as to tracks off the right side of the highway about where Wilson said Mrs. Myers went off the pavement. Later counsel for the Wilsons moved the court to withdraw the testimony from the consideration of the jury with the proper admonition. All of the Myers joined in this motion but Crabtree and Walker objected and the motion was overruled. Wilsons' counsel again moved the court to withdraw this testimony in the cases of Arthur Wilson and Christine Wilson against Alma Myers. He asked that the admonition to the jury be confined to those cases. Although Alma Myers had joined the Wilsons in the first motion, on the second motion she objected to the evidence being so withdrawn from the jury. Alma Myers having objected to the testimony being withdrawn in Wilson's cases against her, she will not be heard to complain on

the appeal of those cases because of the erroneous admission of the testimony.

Alma Myers complains too of the instructions. We have carefully examined each instruction given by the court and those offered and rejected. Some of the objections to the instructions have become moot questions because of previous holdings in this opinion. We have considered the others and have concluded that there is no prejudicial error in them.

Finding no prejudicial error it is then our conclusion that the judgment should be affirmed as to Alma Myers' liability in the action of Arthur and Christine Wilson against her.

Insomuch as the Company and the Truckers were still in the case when the jury returned its verdict and directed equal payments by Mrs. Myers and the Company, we have concluded to reverse the case and direct a new trial for the sole purpose of determining the amount of damages. We will not speculate on what the jury may have done with the Company and the Truckers out of the case.

The judgments against Marion Walker, Glenn Walker and Homer Crabtree awarding damages to Arthur Wilson and Christine Wilson are reversed.

The judgments against Marion Walker, Glenn Walker and Homer Crabtree awarding damages to Virgil Myers and Ann Myers are reversed.

The judgments dismissing the actions of Virgil Myers, Alma Myers and Ann Myers against Arthur Wilson are affirmed.

The judgments against Alma Myers awarding damages to Arthur Wilson and Christine Wilson are affirmed as to the finding of liability. They are reversed for the sole purpose of determining by new trial the amount of damages in each instance.