**Morris TARRANTS, Doing Business as Morris Tarrants Associates, Appellant,**

**v.**

**HENDERSON COUNTY FARM BUREAU, Appellee.**

Court of Appeals of Kentucky.

June 26, 1964.

Gwin & Iler, Owensboro, for appellant.

Mitchell & Withers, Henderson, for appellee.

WILLIAM DIXON, Special Commissioner.

Morris Tarrants, doing business as Morris Tarrants Associates, sued the Henderson County Farm Bureau, a corporation, for architectural services performed of the value of $3,346.23. At the conclusion of the plaintiff's evidence, the court directed a verdict in favor of the Bureau on the ground that appellant was dealing with a corporation and there was no proof to show that the contract was authorized by the corporation. Tarrants appeals from a judgment in favor of the Bureau.

The Bureau had been considering for some time the erection of an office building at Henderson. James Bethel was an architectural draftsman in Henderson with whom Tarrants had contemplated forming an association. Bethel had been contacted by the members of the Bureau and urged to prepare a preliminary drawing for the office building planned to be built. Bethel informed the Bureau members that he was not a registered or licensed architect and could not file detailed plans for such a building. However, it was agreed he would receive $150 for his work on the preliminary plans. Tarrants was a registered and licensed architect in Kentucky, Illinois, and Indiana. An association by Tarrants and Bethel under the name of Morris Tarrants Associates was formed and an office was set up in Henderson to promote their business as such architects.

During the latter part of April 1960, in the office of the Associates, a meeting was held with some twelve to fourteen members of the Bureau, including Rudy Felty, Secretary-Treasurer, and also a Mr. Green, acting President.

The discussion at the meeting covered the building, space requirements, and architectural fees and services. The fee was to be six per cent of the total contract award. No objections were voiced by any of the group and the architects were instructed to prepare the detailed drawings and receive bids for the erection of the building.

The drawings were prepared, with changes made at the request of different Bureau members. The plans and specifications were submitted for bids to four different contractors that had been suggested by the Bureau. Only two submitted bids. They were opened on July 15, 1960, in the office of the Associates. The lower bid was $87,694. This, evidently, was more than the Bureau had expected to pay and no action was taken toward starting construction. Subsequent to the opening of the bids, the Associates made changes and

adjustments in the plans, hoping to construct a building that would be more acceptable to prospective tenants.

The matter was permitted to linger for two or three months until Tarrants contacted Rudy Felty and demanded payment for the work that had been done. Felty informed him it was a matter that addressed itself to the Bureau, and no action was taken with reference to paying. However, Bethel received a check for $150 "for payment in full for architectural services." This check which had been promised for the preliminary plans was received by Bethel after the Association had dissolved. The name of the Associates appeared on all of the copies of the plans and specifications which were furnished to the prospective bidders and to the Bureau. None of these plans was ever returned to the Associates.

On November 24, 1961, Tarrants filed a complaint, asking a judgment in the sum of $3,346.23 for the services performed up to the point of advertising and opening the bids. This sum represented by per cent the amount due an architect on the $87,694 building, when plans had progressed to the point where bids could be received for its construction, as recommended by the American Institute of Architects.

The second paragraph of the complaint states: "That the defendant is indebted to the plaintiff in the amount of $3,346.23 for services performed for which the defendant refused to pay."

It is conceded by appellant that no formal orders or resolutions were passed by the Bureau authorizing the plans to be drawn and no formal action was taken to approve them after they had been drawn. However, no action by any member of the Bureau was ever taken to protest or object to the preparation of the plans.

The Bureau attempts to defeat Tarrants' claim on the grounds that: (1) No formal resolution was ever passed or approved by the Bureau authorizing the work to be

done; (2) the action is based upon an express contract which was not proven; (3) payment of this claim is prohibited by KRS 247.270(2); and (4) the payment to Bethel of the $150 was complete payment for their obligation to the Associates.

Bethel had been contacted before the association was formed and that check was in payment for very limited preliminary plans which did not contain a detailed drawing or any of the specifications for the internal structure of the building. The only evidence offered in this record shows that 379 hours were spent in the preparation of the detailed drawings and specifications. A copy was received by the Bureau and the other copies were passed out to the prospective bidders by the Associates at the suggestion and request of the Bureau.

■ The Bureau's contention as stated in No. 1 above is counter to the rule stated in Catlettsburg & Buchannan Telephone Company v. Bond, 262 Ky. 106, 89 S.W.2d 859: "It is not always essential that corporate action be in pursuance of a formal resolution, for a corporation may be bound by implication, and a ratification, however made, relates back and is equivalent to a prior authority." In Hall v. Commonwealth, etc., Ky., 331 S.W.2d 272, the Department of Highways was held liable for services performed without formal contract because of ratification by the Department. This appears to be the general rule. See 13 Am.Jur., Corporations, Section 936, page 899, and Section 1106, page 1032. When there is evidence of acceptance of benefits and ratification there is a question for the jury, and the court was in error in directing a verdict. Big Sandy Realty Company v. Stansifer Motor Company, Ky., 253 S.W.2d 601, and Id., Ky., 294 S.W.2d 529.

■ The second objection is that an express contract is asserted in the complaint which is not proved. We do not understand that appellant's claim is based on an express contract. It simply states: "That the defendant is indebted to the plaintiff in the sum of $3,346.23 for services performed for which the defendant refused to pay." In 7 Clay, CR, page 436, Official Form No. 3 simply states: "Defendant owes plaintiff ten thousand dollars according to the account hereto annexed as Exhibit A." Form No. 5 states: "Defendant owes plaintiff ten thousand dollars for money lent by plaintiff to defendant on June 1, 1950." It is hard to see how the complaint in this case could be bad in the face of so much similarity to these and other officially-approved complaints. The complaint and statement of account filed with it afforded appellee notice of the essential elements of the claim based on an implied contract. It was unnecessary to allege an express contract. Snowden v. Snowden, 29 Ky. Law Rep. 1112, 96 S.W. 922. It was further unnecessary that appellant prove compliance with KRS 247.270(2) for the reason hereinafter stated. Pryor v. York's Ex'r, Ky., 305 S.W.2d 775, is distinguishable on the facts.

■ At the conclusion of the evidence, appellant attempted to amend his complaint to conform with the evidence which is authorized by CR 15.01, but was prohibited by the court. This would not have taken the Bureau by surprise or prejudiced their rights. In this, the court erred.

■ The third contention made by the Bureau to resist payment of this claim is that its payment is prohibited by KRS 247.270(2), governing duties of the Bureau treasurer, who is not a party. It is hard to assume that the Bureau could create a legal debt that it would be prohibited from paying because its payment had not been approved by the Board of Directors or the Executive Committee. Such an interpretation would place the Bureau beyond the power of the courts and the law. This statute relates to the method of payment of a liability and not to creation of a liability. It would not bar the payment of a debt that was ordered to be paid by the judgment of a court that had jurisdiction.

■ There is no merit in the plea of payment based on the payment to Bethel of $150 for preliminary work.

It is our opinion that the judgment should be reversed.

The opinion is approved by the Court and the judgment is reversed with directions to grant a new trial and for proceedings consistent herewith.

PALMORE, J., not sitting.